UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHRISTY BITZKO, individually and on behalf of
all others similarly situated,

                Plaintiff,

           v.                     **Case No. 1:17-cv-00458-BKS-DJS**

WELTMAN, WEINBERG & REIS CO., LPA,

                Defendant(s).

---

## WELTMAN, WEINBERG & REIS CO., LPA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

 

Glenn M. Fjermedal, Esq.
DAVIDSON FINK LLP
*Attorneys for Defendant*
Weltman, Weinberg & Reis Co., L.P.A.
Office and Post Office Address
28 East Main Street, Suite 1700
Rochester, New York 14614
Telephone:  (585) 546-6448

## TABLE OF CONTENTS

I. INTRODUCTION…………………………………………………...…………………………5

II. LEGAL ARGUMENT……………………………………………………………………....6

    A.    The Class Certification Standard……………………………………………………6

    B.    Plaintiff's Motion For Class Certification Must Be Denied Because Plaintiff's Class Action Claim Cannot Prevail On Its Merits…………………………………………8

    C.    Plaintiff Has Failed To Meet Her Burden Of Proving That The Nature Of Each Underlying Financial Obligation At Issue Can Be Determined On A Class-Wide Basis…………………………………………………………………………………9

    D.    Plaintiff Fails To Satisfy The Requirements Of Rule 23…………………………15

        1.    Plaintiff Fails To Meet The Requirement Of Rule 23(a)…………………15

            a.    Plaintiff Fails To Establish Numerosity Under Rule 23(a)(1)…….16
            b.    Plaintiff Fails To Prove Commonality Under Rule 23(a)(2)……...17
            c.    Plaintiff Fails To Demonstrate Typicality Under Rule 23(a)(3)….18

    E.    Plaintiff Fails To Establish That The Proposed Class Meets The Requirements Under Rule 23(b)(3)……………………………………………………………....19

        1.    Class Certification Is Improper Because Questions Affecting Individual Members Predominate The Common Fact Of The Class………………….19
        2.    Class Certification Is Improper Because Questions Affecting Individual Members Predominate the Common Law Of The Class………………….20
        3.    Class Certification Is Improper Because It Is Not The Superior Method Available To Adjudicate This Matter………………………………….22

III. CONCLUSION………………………………………………………………………25

i

# TABLE OF AUTHORITIES

**Case Law Citations.**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)………………………………………………………………10,16,19

*Annunziato v. Collecto, Inc.,*
293 F.R.D. 329 (E.D.N.Y. 2013)………………………………………………….....16

*Avila v. Riexinger & Associates,* LLC,
817 F.3d 72 (2d Cir. 2016)………………………………...…………………passim

*Bakalar v. Vavra,*
237 F.R.D. 59 (S.D.N.Y. 2006)………………………………………………....16,18

*Beauvoir v. Israel,*
794 F. 3d. 214 (2d Cir. 2015) …………………………………………...............11

*Benfield v. Mocatta Metals Corp.,*
1993 U.S. Dist. LEXIS 5856 (S.D.N.Y. 1993)……………………………….…….7

*Bloom v. I.C. Sys., Inc.,*
972 F.2d 1067 (9th Cir. 1992)………………………………………………….....12

*Bodine v. First Nat. Collection Bureau, Inc.*
2010 U.S. Dist. LEXIS 131352 (D.N.J., 2010)…………………………………….22

*Bolin v. Sears Roebuck & Co.,*
231 F.3d 970 (5th Cir. 2000)………………………………………………….....19

*Boosahda v. Providence Dane LLC*
2012 U.S. App. LEXIS 1828 (4th Cir. 2012)……………………………………….12

*Brecher v. Republic of Argentina,*
806 F. 3d 22 (2d Cir. 2015)………………………………………………………10

*Brown v. Kelly,*
609 F. 3d 467 (2d Cir. 2010)…………………………………………………...…..7

*Carlin v. Davidson Fink, LLP,*
852 F.3d 207 (2d Cir. 2017)………………………………….…………….3,4,8,9,21,22

*Christensen v. Kiewit-Murdock Investment Corp.,*
815 F.2d 206 (2d Cir. 1987)………………………………………………………7

*Clark v. Brumbaugh & Quandahl, P.C.*,
731 F. Supp. 2d 915 (D. Neb. 2010)……………………………………………………12,21

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)…………………………………………………………………..6,7,8,15

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F. 3d 473 (2d. Cir. 1995)…………………………………………………………16,18

*Davis v. Hollins Law*,
968 F. Supp. 2d 1072 (E.D. Cal. 2013)………………………………………………..12

*Deporter v. Credit Bureau of Carbon County*,
2015 U.S. Dist. LEXIS 55345 (Dist. Col. 2015)………………………………………21

*Encarnacion ex rel. George v. Astrue*,
491 F. Supp. 2d 453 (S.D.N.Y. 2007)…………………………………………………..7

*Gallego v. Northland Group Inc.*,
814 F.3d 123 (2d Cir. 2016)………………………………………………………23,24

*Garcia v. LVNV Funding LLC*,
2009 U.S. Dist. LEXIS 85967 (W.D. Tex. 2009)……………………………………13

*Gen. Tel Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982)………………………………………………………………7,8,18

*Holman v. W. Valley Collection Serv., Inc.*,
60 F. Supp. 2d 935 (D. Minn. 1999)…………………………………………………12

*Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006)……………………………………………………………6

*Initial Pub. Offering Sec. Litig.*,
483 F.3d 70 (2d Cir. 2007)……………………………………………………………6

*Jerri Califf v. Weltman, Weinberg & Reis Co.*,
Case No.: 1:17-cv-108, (W.D. Mich. 2017)…………………………………………21

*Johnson v. Nextel Communications Inc.*,
780 F.3d 128 (2d. Cir. 2015)………………………………………………………...20

*Karhu v. Vital Pharms., Inc.*,
621 Fed. Appx. 945 (11th Cir. 2015)………………………………………13,14,15

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.,*
214 F.3d 872 (7th Cir. 2000)...................................................................12.21

*Monaco v. Stone,*
187 F.R.D. 50 (E.D.N.Y. 1999)....................................................................18

*Moss v. Cavalry Invs., L.L.C.,*
2004 U.S. Dist. LEXIS 24990 (N.D. Tex. 2004)..............................................12

*Myers v. Hertz Corp.,*
624 F.3d 537 (2d Cir. 2010)..........................................................................6

*Perk v. Wordon,*
475 F. Supp. 2d 565 (E.D. Va. 2007)............................................................12

*Petrobras Securities,*
862 F.3d 250 (2d Cir. 2017)...................................................................10,11

*Riffle v. Convergent Outsourcing,*
311 F.R.D. 677 (M.D. Fla. 2015)...................................................................14

*Risk Mgmt. Alternatives, Inc.,*
208 F.R.D. 492 (S.D.N.Y. 2002).....................................................................16

*Santibanez v. Nat'l Credit Sys.,*
2017 U.S. Dist. LEXIS 4519 (D. Or. 2017).....................................................21

*Schaefer v. ARM Receivable Mgmt., Inc.,*
2011 U.S. Dist. LEXIS 77828 (D. Mass. 2011)................................................22

*Slenk v. Transworld Sys., Inc.,*
236 F.3d 1072 (9th Cir. 2001).......................................................................11

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2016)...................................................................................4

*Sullivan v. DB Invs., Inc.,*
667 F.3d 273 (3d Cir. 2011)...........................................................................19

*U.S. Foodservice Inc. Pricing Litigation,*
729 F.3d 108 (2d Cir. 2013)..........................................................................21

*Wal-Mart Stores v. Dukes,*
131 S. Ct. 2541 (2011).............................................................................7,17

*Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)……………………………………………………...22

*Zimmerman v. HBO Affiliate Group*,
834 F. 2d. 1163 (3rd Cir. 1987)…………………………………………………..11

*Zirogiannis v. Seterus, Inc.*,
2017 U.S. App. LEXIS 17818 (2d Cir. 2017)………………………………....…9

**Statutory Citations.**

Fair Debt Collection Practices Act 15 U.S.C. §1692
……………………………………………………………………………..passim

Fed. R. Civ. P. 23
……………………………………………………..........................................passim

## I.      INTRODUCTION

Defendant, Weltman, Weinberg & Reis Co., L.P.A. ("Defendant" or "WWR"), by and through its undersigned counsel, opposes Plaintiff Christy Bitzko's Motion for Class Certification pursuant to Fed. R. Civ. P. Rule 23 ("Rule 23") as fundamentally deficient as a matter of law (Docket No. 49). The instant lawsuit is a putative class action in which Plaintiff, in the first instance, alleges that Defendant, a law firm, violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*, ("FDCPA"), by sending a collection letter ("Letter A") on law firm letterhead. Pursuant to Plaintiff's theory, truthfully identifying itself as a law firm in a collection letter serves as a "misrepresentation" in violation of the FDCPA, "when the attorneys were not meaningfully involved in preparing and sending the letters." (Amended Complaint, ¶ 8).

Plaintiff's position is erroneous. Initially, each and every letter containing WWR's letterhead, including the letter sent to Plaintiff, truthfully and accurately identifies WWR as a law firm. Additionally, as a law firm, attorneys are involved in all aspects of WWR's collection activities. Therefore, any implication that an attorney was involved in Plaintiff's account was wholly accurate as WWR's attorneys are, as a matter of law, meaningfully involved in the collection of all accounts that WWR attempts to collect upon. Furthermore, the "meaningful involvement doctrine," upon which Plaintiff relies, is a legal fiction that cannot be found anywhere within the FDCPA[1].

Plaintiff's second prong pled in her Amended Complaint, at issue in this Class Certification Motion, alleges violations of 15 U.S.C. §1692g(a)(1) and (e) of the FDCPA on the basis of WWR's purported failure to provide certain "safe harbor" language concerning the accrual of interest and/or fees as purportedly mandated by the Second Circuit Court of Appeals in *Avila v. Riexinger &*

---

[1] Plaintiff failed to move for class certification or summary judgment against WWR on this first prong of her FDCPA suit.  (See Docket Nos. 48 and 49).  As Plaintiff has yet to formally dismiss the first prong of her Amended Complaint, which apparently has been withdrawn by Plaintiff, Defendant respectfully refers this Court to Legal Arguments Sections B and C of its Motion for Summary Judgment.  (Docket No. 45).

*Associates,* LLC, 817 F.3d 72, 76 (2d Cir. 2016) ("*Avila* claim")  to which she was allegedly not

aware. (Amended Complaint ¶¶ 31-34 and ¶¶ 45-46).  The Plaintiff defined the class in her Amended

Complaint as follows:

> "(a) all individuals nationwide to whom Weltman, Weinberg & Reis Co., LPA mailed
> collection letters (b) which misrepresent that the letters are from attorneys and that
> attorneys were meaningfully involved, when the attorneys were not meaningfully
> involved in preparing and sending the letters; and which contain no disclaimer
> concerning Weltman, Weinberg & Reis Co., LPA's lack of meaningful attorney
> involvement in the collection of these consumers' alleged debts; (c) which explicitly
> or implicitly threaten unintended legal action; (d) which fail to include any "safe
> harbor" language concerning the accrual of interest and/or fees; (e) which were sent
> on or after a date one year prior to the filing of this action and on or before a date 21
> days after the filing of this action." (Amended Complaint ¶ 8).

Ms. Bitterman attests in her Declaration in Support of WWR's Motion for Summary Judgment

(Docket No. 45) that WWR is also meaningfully involved in making sure that its letters to New York

consumers provide the correct "Balance Due" on a date certain together with any itemized accountings

required under NYDFS regulations. (Statement of Material Undisputed Facts ("SMUF") ¶ 42). Ms.

Bitterman attests that WWR obtains information from creditor clients about consumer accounts, and

data is loaded into WWR's computer system. (SMUF ¶ 12).  Specifically, Ms. Bitterman asserts that

WWR attorneys are involved in bringing clients to the firm, drafting client contracts, checking their

reputation, interacting with the client, and discussing the available data and documentation, the history

of their portfolio and types of accounts, which consumers are represented by attorneys, any asset

reviews that have occurred, and arbitration or bankruptcy information, reviewing the clients procedures

and policies, and evaluating whether the client is a trustworthy and legally compliant creditor. This

takes place in a comprehensive compliance process before demand letters are sent. (SMUF ¶ 12). Also

of significance in the course of Defendant's compliance process is the fact that Defendant's attorneys

obtain warranties as to the validity of the debts put forth for collection; sampling is taken of relevant

documentation and terms from collection accounts are analyzed, including calculation of interest

rate;, analysis of default provisions is undertaken, applicable statutes of limitations are determined, potential applicability of arbitration is looked at; review is made for responsible parties; debtor asset's are reviewed; and the validity of fees is analyzed. (SMUF ¶ 13).

WWR made sure that all of its New York letters for charged-off accounts also provide an itemized breakdown of a Balance Due as of a date certain, which in Letter A is as follows:

| | |
|---|---|
| Balance Due as of August 11, 2016: | $13,750.28 |
| Account Charge-Off Date: | 02/01/2016 |
| Total Amount Due Since Charge-Off: | $13,359.86 |
| Total Interest Charged Since Charge-Off: | $390.42 |
| Total Charges and Fees Since Charge-Off: | $0.00 |
| Total Payment(s) Made Since Charge-Off: | $0.00 |

(SMUF ¶ 41). This itemized accounting would include exact accruing post charge-off interest which in Letter A was $390.42. (SMUF ¶ 42). Moreover, the balance of $13,750.28 as of August 11, 2016 would be expected to increase due to the accruing post charge-off interest identified in the NYDFS disclosures in WWR's Letter A. (SMUF ¶ 42). To the extent a consumer disagrees with the NYDFS itemization of post charge-off interest or fees provided based on their student loan agreement, the consumer can seek validation of such debt under 15 U.S.C. §1692g(a)(1) which Ms. Bitzko never requested. (SMUF ¶ 33). Accordingly, after meaningful attorney review, WWR's Balance Due as of August 11, 2016 of $13,750.28 was accurate[2] and Total Interest Charged Since Charge-Off of $390.42 properly reflected that interest continued to accrue on Ms. Bitzko's Federal student loan, in the same fashion as most delinquent Federal student loans. (SMUF ¶ 44).

Plaintiff's Motion for Class Certification now adds an additional claim beyond *Avila,* further alleging that Defendant's Letter A failed to provide a complete notice regarding the "amount of the

---

[2] While Plaintiff interjected a new argument that WWR's letter failed to provide a complete notice regarding the "amount of debt" as required by *Carlin v. Davidson Fink, LLP*, 852 F.3d 207 (2d Cir. 2017), it is abundantly clear that the NYDFS disclosure broke down the $13,750.28 due as of August 11, 2016 which included $390.42 of finite and accrued post-charge-off interest only. There were no estimated future charges and/or fees to confuse this "least sophisticated" consumer Plaintiff.

debt" as required by the Second Circuit Court of Appeals in *Carlin v. Davidson Fink, LLP*, 852 F.3d 207 (2d Cir. 2017). This claim was made after the closure of discovery and will be opposed both procedurally and substantively herein as well as in Defendant's opposition to Plaintiff's Motion for Summary Judgment.

Assuming, *arguendo*, that Plaintiff has standing, which she does not[3], Plaintiff's position that Letter "A" does not provide the "amount of the debt" is simply wrong. WWR's Letter A is <u>not</u> ambiguous in any way and accurately represents the character, amount, and legal status of the debt under 15 U.S.C. §1692g(a)(1) and (e). The $13,750.28 "Balance Due" as of the August 11, 2016 date of Letter A is subject to only one interpretation – the amount of Ms. Bitzko's debt obligations on the date of the letter. Moreover, Letter A provides an accurate itemized accounting of the "Balance Due" for Plaintiff's student loan debt as mandated by the New York Department of Financial Services ("NYDFS") codified in 23 NYCRR 1.2(b). (SMUF ¶ 41). Letter A clearly identifies "Total Interest Charged Since Charge-off: $390.42" and "Total Charges and Fees Since Charge-off $0.00". *Id.* Adding the above amount to the $13,359.86 "Total Amount Due at Charge-off", it is clear that the Balance Due as of August 11, 2016 totals $13,750.28. (SMUF ¶ 41). Letter A's reference to "Total Interest Since Charge-off $390.42" clearly shows that post charge-off interest on Ms. Bitzko's student loan debt continued to accrue post charge-off , much like all of NCSLT-based Federal student loans. (SMUF ¶ 42). To say that Letter A neglects to show that the student loan accrues interest is to defy the plain and unambiguous language of Letter A. Accordingly, there is no need for either an *Avila* interest disclosure or *Carlin* clarification with respect to estimated or future costs as Letter A's NYDFS post charge-off interest line item clearly

---

[3] Plaintiff fails to establish on Article III "injury in fact" by establishing that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016).

evidences accrued post charge-off interest of $390.42 and $0.00 of post-charge-off costs or fees on Ms. Bitzko's student loan debt as of August 11, 2016.

As explained in Plaintiff's Memorandum for Class Certification, Plaintiff now requests to certify a newly defined class defined as follows:

> "All consumers to whom Weltman, Weinberg & Reis Co., LPA mailed letters seeking to collect debts which were subject to increase based on interest and/or late fees, but which failed to disclose that the amount of the debt was subject to increase, and (2) which were sent on or after a date one year prior to the filing of this action and on or before a date 21 days after the filing of this action."

(*See* Plaintiff's Motion (Docket No. 49) at p. 1). Critically, Plaintiff's proposed class consists only of persons who received letters in attempt to collect a consumer debt. This means that Plaintiff's proposed class requires an individualized inquiry directed to each putative class member in order to determine whether an individual's obligation is a consumer or commercial debt. The necessity of this inquiry is fatal to Plaintiff's Motion for Class Certification.

Plaintiff also makes no attempt to provide proof as to the class size, simply stating that the putative class members are "well over forty and more likely in the thousands of potential members". (Docket No. 49, at p. 4).   Plaintiff, however, interposed no discovery demands and sought no testimony from WWR to meet her burden to prove class size.  WWR only confirmed the approximate number of individuals who were sent letters during the subject time period in the context of mediation negotiations.  Defendant could only state, at that time, that there were over 58,000 "individuals" ***not*** class members or consumers, because there is no evidence that the referenced individuals are "consumers" or owed "debts" as prescribed under the FDCPA. *See* 15 U.S.C. §§ 1692a(3) and a(5). Plaintiff misconstrues the term "individual" to be synonymous with the term "class member" or "consumer when it is not. Plaintiff just assumes that any individual who has received a collection letter from Defendant automatically fits into the definition of a consumer as defined by the FDCPA. 15 U.S.C. § § 1692a(3)and a(5). Plaintiff attempts to gloss over this prerequisite by using the blanket

5

term "consumer" throughout her Motion without taking any steps to demonstrate how any of the individuals identified by Defendant are in fact consumers under the FDCPA.

Nothing in Defendant's records can objectively reveal the purpose of the obligation or extension of credit for each individual (*i.e.*, why did each person purchase what he or she purchased). The only method to accurately determine whether an obligation is primarily for personal, family or household purposes, and is subsequently a "consumer debt" under the FDCPA, is to directly ask the person making the purchase. Moreover, the one or two claims forming the basis of the lawsuit are without merit and therefore, subject to Summary Judgment as addressed at greater length in Defendant's Motion for Summary Judgment (Docket No. 45). Accordingly, Plaintiff's Motion for Class Certification is futile and, therefore moot. Alternatively, Defendant requests that the Court stay rendering a decision on the Class Certification Motion until the Court has rendered its decision on the pending Summary Judgment motions. Even if Defendant's Motion for Summary Judgment is denied, and as discussed at greater length in Sections II. C, D, and E below, Plaintiff is entirely unable to abide by the numerosity, commonality and typicality components of Rule 23(a) (1)-(3) and "predominance" and "superiority" components of Rule 23(b)(3).

## II.    LEGAL ARGUMENT

### A. THE CLASS CERTIFICATION STANDARD.

A class action is "an exception to the usual rule that litigation is conduct by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The party seeking class certification bears the burden of establishing by a preponderance of the evidence that the Rule 23 requirements have been met. *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). The certification decision requires "rigorous analysis." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006), decision clarified on denial of reh'g sub nom. *In re Initial Pub. Offering Sec.*

*Litig.*, 483 F.3d 70 (2d Cir. 2007) (*quoting Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

To fit squarely in the exception and establish a class action, the party asserting the class action "must affirmatively demonstrate his compliance" with Federal Rule of Procedure 23. *Behrend*, 569 U.S. at 33 (*citing Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Furthermore, "[t]he Rule 'does not set forth a mere pleading standard," instead, "a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)(1)-(4))[4]. *Id.* Additionally, a plaintiff has the burden to satisfy one of the Rule 23(b) provisions, in this case Rule 23(b)(3) monetary damages class, "which requires a court to find that 'the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Brown v. Kelly*, 609 F. 3d 467, 476 (2d Cir. 2010).

Finally, a District Court has discretion to reserve decision on a class certification motion pending disposition of a motion to dismiss." *Encarnacion ex rel. George v. Astrue,* 491 F. Supp. 2d 453, 459 (S.D.N.Y. 2007) (finding that class certification would be futile as plaintiffs failed to raise a triable issue of fact in opposition to defendant's motion for summary judgment) (quoting *Benfield v. Mocatta Metals Corp.,* 1993 U.S. Dist. LEXIS 5856 at *7 (S.D.N.Y. 1993)); *see also Christensen v. Kiewit-Murdock Investment Corp.,* 815 F.2d 206, 214 (2d Cir. 1987) (citation omitted) (district court had discretion to decide summary judgment motion before class certification motion so as "to protect both the parties and the court from needless and costly further litigation.").

---

[4]One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4).

**B.   PLAINTIFF'S MOTION FOR CLASS CERTIFICATION MUST BE DENIED BECAUSE PLAINTIFF'S CLASS ACTION CLAIM CANNOT PREVAIL ON ITS MERITS.**

In following *Behrend*, it is beneficial for a court "to probe behind the pleadings before coming to rest on the [class] certification question." *Behrend*, 569 U.S. at 33. To properly analyze both the Rule 23(a) and Rule 23(b) requirements, "[s]uch an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Id.* at 33-34. Furthermore, "'class determination generally involves considerations that are enmeshed in the factual and legal issues compromising the plaintiff's cause of action. *Id.* at 34 (*quoting Gen. Tel Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)[5].

The crux of Plaintiff's claims against WWR is that its Letter A violated 15 U.S.C. § 1692g(a)(d) and (e) on the basis of WWR's purported failure to: (1)  provide certain "safe harbor" language concerning the accrual of interest and/or fees as purportedly mandated in *Avila*, 817 F.3d at 76 (2d Cir. 2016) ("*Avila* claim"); and (2) a complete notice regarding the "amount of the debt" as purportedly required in *Carlin*, 852 F. 3d at 215-216.  These claims, however, fail to state a viable claim upon which relief can be granted and is properly dismissed pursuant to Rule 56(c) because nothing in WWR's letter is misleading to Plaintiff or any least sophisticated consumer.

As previously argued in WWR's pending Motion for Summary Judgment and in opposition to Plaintiff's Motion for Summary Judgment (Docket Nos. 45, 48 and 51), WWR's Letter A is <u>not</u> ambiguous in any way and accurately represents the character, amount, and legal status of the debt. The "Balance Due" as of the August 11, 2016 date of Letter A is most certainly accurate-that Ms. Bitzko owed $13,750.28 as of August 11, 2016.  This amount is further backed up by an accurate itemized accounting of the "Balance Due" of Plaintiff's student loan debt as mandated by NYDFS codified in 23 NYCRR 1.2(b).  (SUMF ¶¶ 39-40).  Letter A clearly identifies "Total Interest Charged

---

[5] Defendant respectfully refers to Legal Argument Section B(1)-(4) of its Opposition to Plaintiff's Motion for Summary Judgment addressing the lack of merits of Plaintiff's entire 15 U.S.C. §1692g(a)(1) and (e) claims (Docket No. 45).

Since Charge-off: $390.42" and "Total Charges and Fees Since Charge-off $0.00". (SUMF ¶ 41). Adding the above amount to the $13,359.86 "Total Amount Due at Charge-off", it is abundantly clear that the Balance Due as of August 11, 2016 is undisputedly $13,750.28. (SUMF ¶ 44). Moreover, Letter A's reference to "Total Interest Since Charge-off $390.42" clearly shows that post charge-off interest on Ms. Bitzko's student loan debt was continuing to accrue, much like all of NCSLT-based Federal student loans. (SUMF ¶ 45).

The accounting in Letter A is much like the detailed breakdown of the debt in *Zirogiannis v. Seterus, Inc.*, 2017 U.S. App. LEXIS 17818 (2d Cir. 2017) which included charge-off balance and post charge-off interests and costs. To say that Letter A fails to appropriately state the amount of the debt or the fact that the student loan accrues post-charge-off interest defies the plain and unambiguous language of Letter A. Further, there is absolutely no need for an *Avila* interest disclosure as Letter A's NYDFS post charge-off interest line item clearly notes accruing interest to Ms. Bitzko. Further, there was no reference to any estimated "future costs and fees" – only the amount due as of August 11, 2016 which included $390.42 of post-charge-off interest and $0.00 of post charge-off charges and fees. As such, WWR fully complied with the dictates of *Carlin* by providing Plaintiff with an itemized and comprehensive "amount of the debt" owed by the Plaintiff warranting summary judgment relief. For these reasons, Plaintiff fails to state a claim under which relief can be granted as to her 15 U.S.C. § 1691g(1)(a) and e claims and those claims should be summarily dismissed pursuant to Rule 56(c).

### C.   PLAINTIFF HAS FAILED TO MEET HER BURDEN OF PROVING THAT THE NATURE OF EACH UNDERLYING FINANCIAL OBLIGATION IS ASCERTAINABLE ON A CLASS-WIDE BASIS.

Plaintiff has failed to produce any proof whatsoever to make a threshold showing that the obligations at issue can be determined on a class-wide basis. "Every putative class action must satisfy

the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy." In re *Petrobras Securities,* 862 F.3d 250, 257 (2d Cir. 2017) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). "In addition to the Rule 23(a) requirements, a class action must be maintainable under Rule 23(b)(1), (2), or (3)." *Id.* Here, Plaintiff seeks to certify a class under Rule 23(b)(3). (Docket No. 45 at pp. 7-8).). "'A Rule 23(b)(3) class must also be 'currently and readily ascertainable based on objective criteria.'" In re *Petrobras Securities,* 862 F. 3d. at 257.

In *Brecher v. Republic of Argentina*, 806 F. 3d 22 (2d Cir. 2015) the Second Circuit Court of Appeals offered its first affirmative definition of the implied ascertainability requirement:

> [T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case.

*Brecher*, 806 F.3d at 24-25 (internal quotation marks and citations omitted). A plaintiff "has the burden of making this showing by a preponderance of the evidence, and the district court must 'undertake a rigorous analysis of the evidence to determine if the standard is met.'" *Id.* The Second Circuit Court of Appeals in In re *Petrobras Sec. Litig.,* 862 F. 3d. 250 (2d. Cir. 2017) declined to adopt a heightened ascertainability showing of "administrative feasibility" but rather clarified its prior *Brecher* decision as follows:

> As this summary clarifies, we reached our decision in *Brecher* by asking whether the class was defined by objective criteria that made the class's membership sufficiently definite, not whether the class was administratively feasible. *See, e.g., id.* at 26 ("The lack of a defined class period . . . makes the modified class *insufficiently definite* as a matter of law." (emphasis added)). The opinion's language about "administrative feasibility" and "mini-hearings" was not strictly part of the holding, and was not intended to create an independent element of the ascertainability test; rather, that language conveyed the *purpose* underlying the operative requirements of definiteness and objectivity. That is, a class must be "sufficiently definite *so that* it is administratively feasible for the court to determine whether a particular individual is a member"; a class must be "defined by objective criteria" *so that* it will not be

necessary to hold "a mini-hearing on the merits of each case." *Id.* at 24 (emphasis added) (citations omitted).

Significantly, Plaintiff has failed to meet her burden to establish the threshold objectory requirement of ascertainability. The *Petrobras* opinion is illustrative of why Plaintiff will be unsuccessful in any attempt at class certification. It would be an impossible endeavor to objectively determine whether any type of class of claimants existed without the type of "extensive and individualized fact-finding or mini-trials". Plaintiff alleges that her debt "obligation arose out of a transaction in which money, property insurance, or services, which were the subject of the transaction were primarily for personal, family or household purposes." (Amended Complaint at ¶ 18). Plaintiff asserts that the class size is well over forty (40) and more likely in the thousands of potential members without any evidentiary support. (Docket No. 49 at p. 4). This is patently incorrect as Defendant has only ever provided a number of "individuals" who were sent letters. Defendant has never provided the number of "consumers" who were sent letters because it would never be able to do so.

Plaintiff assumes without providing evidence that the obligations incurred by the forty (40) plus individuals who received collection letters were from purchases made for personal, family or household purposes. This is patently insufficient. Thus, it would be impossible, without deposing each individual class member, to confirm whether the obligations were incurred for personal or commercial use. As a result, Plaintiff is unable to demonstrate compliance with Rule 23.

Notably, Plaintiff does not even touch on this crucial "ascertainability" issue in her Motion which she did not even acknowledge. It is a threshold requirement of FDCPA claims that the allegedly impermissible action be taken in an effort to collect on an obligation that falls within the statutory definition of 'debt.' *See Beauvoir v. Israel*, 794 F. 3d. 214 (2d Cir. 2015) (citing to *Zimmerman v. HBO Affiliate Group*, 834 F. 2d. 1163 (3rd Cir. 1987)); *see also Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072 (9th Cir. 2001) (holding courts should "look to the substance of the transaction and the borrower's

purpose in obtaining the loan, rather than the form alone," to determine whether a loan is consumer or commercial in nature); *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (holding that "[n]either the lender's motives nor the fashion in which the loan is memorialized" determines whether a transaction is a "debt" under the FDCPA); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000) (holding that in determining the nature of the debt, "the relevant time is when the loan is made, not when collection is attempted"); *Boosahda v. Providence Dane LLC* No. 10-1933, 2012 U.S. App. LEXIS 1828, *9-10 (4th Cir. Jan. 31, 2012) ("To establish a FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." (internal quotations omitted)); *Davis v. Hollins Law*, 968 F. Supp. 2d 1072, 1078-1080 (E.D. Cal. Sept. 11, 2013) ("[A]lthough plaintiff herein may have ostensibly obtained the American Express card for business purposes, it does not follow as a matter of law that collection efforts on that card are exempted from the FDCPA and the Rosenthal Act. An inquiry must be made into what he purchased in allegedly incurring an unpaid obligation."); *Perk v. Wordon*, 475 F. Supp. 2d 565, 569 (E.D. Va. 2007) (noting "courts have looked to the substance of transactions to determine whether they fall under the ambit of consumer protection statutes"); *Clark v. Brumbaugh & Quandahl, P.C.*, 731 F. Supp. 2d 915 (D. Neb. 2010) (holding "the [proper] focus [is] on the nature of the debt that was incurred, and not the purpose for which the Account as opened"); *Holman v. W. Valley Collection Serv., Inc.*, 60 F. Supp. 2d 935, 937 (D. Minn. 1999) ("[I]f a communication to a debtor's home converted any commercial debt into an obligation under the FDCPA, it would be tantamount to an amendment of the clear intent of Congress"); *Moss v. Cavalry Invs., L.L.C.*, 2004 U.S. Dist. LEXIS 24990, at *3 (N.D. Tex. Sep. 20, 2004) ("The critical inquiry in determining whether a debt relates to a personal or business obligation is the nature of the

underlying transaction"); *Garcia v. LVNV Funding LLC*, No. 2009 U.S. Dist. LEXIS 85967, at *3, 11, 13 (W.D. Tex. 2009) (holding that the plaintiff was not entitled to relief under the FDCPA where he denied the credit card at issue was his because he could not establish that the debt in question arose out of a transaction that was primarily for personal, family or household purposes)). Thus, whether an obligation is a "debt" under the FDCPA is an objective test that can be determined only with an analysis of the actual use and purpose of the obligation itself. It is of no benefit to look to the internal name of the department of the law firm which seeks to collect the obligation or any other external factor to determine whether an obligation is a "debt." Thus, the only way to determine the nature of any obligation with respect to the 58,000 potential class members in the present case is to engage in individualized fact finding inquires with each member of the potential class.

Plaintiff's position is also defeated from a logical perspective. If Plaintiff's position were accepted, the result would mean that any collection entity could avoid FDCPA liability entirely by simply ensuring that it only sought to collect obligations using internal designations such as "business accounts" or "commercial collections" to avoid any use of the word "consumer". Of course, such a result would belie the purpose of the FDCPA. Thus, Plaintiff simply cannot rely on Defendant's internal department names to establish the "consumer" nature of any individual's obligation.

Plaintiff has completely omitted reference to the ascertainability requirement by failing to provide with the Court with any demonstration as to how she could establish the threshold requirement that putative class members are "consumers." This burden rests with the Plaintiff to demonstrate that Defendant's records could identify class members and mere speculation of such does not suffice. In *Karhu v. Vital Pharmaceuticals, Inc.*, the Eleventh Circuit held that the Plaintiff did not meet his burden to establish ascertainability for the same reason as in the instant case, *i.e.* the plaintiff did not explain how the defendant's records would aid in identifying the class members. *See Karhu v. Vital*

*Pharms., Inc.*, 621 Fed. Appx. 945, 947-50 (11th Cir. 2015). The Eleventh Circuit affirmed the

district court's denial of class certification and held that "A plaintiff cannot establish ascertainability

simply by asserting that class members can be identified using the defendant's records; the plaintiff

must also establish that the records are in fact useful for identification purposes, and that identification

will be administratively feasible." *Id.* at 948. Accordingly, the Eleventh Circuit held that the plaintiff

could not meet his burden to establish ascertainability because his proposal to identify class members

using the defendant's "'sales data' was incomplete, insofar as [the plaintiff] did not explain how the

data would aid class-member identification. Nor was any potential identification procedure obvious:

[the defendant's] sales data identified mostly third party retailers, not class members." *Id.* at 949.

In *Riffle v. Convergent Outsourcing,* the Middle District of Florida recently followed the

reasoning in *Karhu* and denied class certification on the grounds that the plaintiff failed to provide any

evidence that the identification of the putative class members, including the nature of their debt, could

be ascertained by a review of the company's records, or the records of the original creditor. See *Riffle*

*v. Convergent Outsourcing*, 311 F.R.D. 677, 680-681 (M.D. Fla. 2015).

In rejecting the Plaintiff's argument for want of evidentiary support that a class of "consumer

debtors" could be ascertained, the judge noted:

> Here, Plaintiff has simply intimated that the records of Defendants or the original
> creditor will be useful in identifying potential class members. She has neither
> presented evidence nor precedent that allows the Court to confirm the validity of these
> methods. Indeed, Defendants claim that their records do not show the reasons for
> which each putative class member's debt were incurred. Moreover, Defendants have
> provide declarations from the representative of LVNV and the executive vice president
> of Convergent to support this assertion. [. . .] Furthermore, as Defendants note — and
> Plaintiff does not dispute — Plaintiff has not presented any records of the original
> creditor to show how the nature of a putative class member's debt may be identified.
> Furthermore, there is no evidence demonstrating that the original creditor still possess
> transactional information for the proposed class or whether these records will even
> reveal the nature of each credit card transaction.

The Court does not take conceptual issue with Plaintiff's suggestion of using Defendants' records or the records of the original creditor. **However, the Court is unable to determine if Plaintiff's proposed method is viable because she merely speculates these records are "useful for identification purposes [ ] and that identification will be administratively feasible, without presenting any actual evidence to support those assertions.** *Karhu*, 621 Fed. Appx. 945 (11th Cir. 2015) at *3. Merely accepting Plaintiff's bald assertions would be contrary to the law established by the U.S. Supreme Court, which requires that Plaintiff affirmatively demonstrate her compliance with Rule 23. *See Comcast, Corp.*, S. Ct. at 1432. Therefore, the Court finds that class certification is inappropriate.

*Id.* at 681 (internal footnotes omitted) (emphasis added).

In sum, Plaintiff has failed to meet her burden to establish that an ascertainable class exists because she has failed to identify any records, documentation, or evidentiary support to suggest that more than forty (40) individuals made consumer based purchases. This is because the only way to do so would be to take individual depositions of each of the forty (40) plus individuals. Ultimately, Plaintiff has failed to propose any objective method for ascertaining the class members without requiring extensive and individualized fact finding. Accordingly, Plaintiff's Motion for Class Certification must be denied.

### D.   PLAINTIFF FAILS TO SATISFY THE REQUIREMENTS OF RULE 23.

#### 1.   Plaintiff Fails To Meet The Requirement Of Rule 23(a).

Plaintiff is unable to satisfy the requirements of Rule 23(a). In order to certify a class, the party seeking class certification must satisfy the following four requirements of Rule 23(a):

(1)   The class is so numerous that joinder of all members is impracticable [numerosity];

(2)   There are questions of law or fact common to the class [commonality];

(3)   The claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and

(4)   The representative parties will fairly and adequately protect the interests of the class [adequacy].

*See* Rule 23(a). The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of the requirements of Rule 23 has been met. *See Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) (emphasis added); A class may be certified only if the court "is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."

### a.   Plaintiff Fails To Establish Numerosity Under Rule 23(a)(1).

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." In re *Risk Mgmt. Alternatives, Inc.*, 208 F.R.D. 492, 504 (S.D.N.Y. 2002) (citing to Rule 23(a)(1) This requirement assures that class action treatment is necessary. "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." However, "[m]ere speculation as to the number of members who may be involved is not sufficient to satisfy Rule 23(a)(1)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 335 (E.D.N.Y. 2013); see also *Consol. Rail Corp. v. Town of Hyde Park*, 47 F. 3d 473, 483 (2d. Cir. 1995); *Bakalar v. Vavra*, 237 F.R.D. 59, 66 (S.D.N.Y. 2006).

In her Motion, Plaintiff claims that "[n]umerosity is easily met in this case because the basis for Plaintiff's claims rests on a uniform collection communication that was mailed to forty (40) plus, if not thousands, of consumers during the class period from April 25, 2017 to the present." (Docket No. 49 at p. 4). Yet again, Plaintiff's use of the word "consumer", without demonstrating that any of the thousands of individuals actually are "consumers", must prove fatal to her attempt at class certification. Defendant can and did identify the number of "individuals" who received a letter during a certain time frame. However, this case is not just about who received a letter. To legally determine whether these "individuals" constitute a class of "consumers" under the FDCPA requires that an individual examination be done of each potential class member's obligations. Plaintiff's attempt to lump the thousands of individuals into a class of "consumers" under the FDCPA, based on Defendant's internal use of the words "consumer".

16

As argued above, it is Plaintiff's burden to prove that the forty (40) plus individuals' obligation were in fact for consumer purchases, rather than business purchases, which the FDCPA does not protect. Plaintiff has failed to do so and, therefore, Plaintiff fails to establish the numerosity requirement under Rule 23(a)(1).

### b.   Plaintiff Fails To Prove Commonality Under Rule 23(a)(2).

Under Rule 23(a)(2), to demonstrate commonality, the Plaintiff must show "there are questions of law or fact common to the class." Rule 23(a)(2). Further, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Additionally, to satisfy the commonality requirement, the alleged class's claims must depend upon a common contention. *Id.,* at 2550. Moreover, the common contention "must be capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke. Id.* at 2551.

In Plaintiff's Motion, she argues that this "action is appropriate for class certification because there are questions of fact and law common to the class that predominate over any questions affecting only individual class members. The principal common question is whether the Defendant violated the FDCPA by following its established procedure, and sending thousands of consumers collection letters on law firm letterhead without meaningful attorney involvement." (Docket No. 49, at p. 3). Plaintiff again makes the incorrect assumption that all of the thousands of "individuals" face the same common question, merely because these individuals received the same letter from Defendant. However, as explained above, the only way to determine a membership in Plaintiff's proposed class would be a personalized examination of each putative class member to determine whether that putative class member incurred a consumer debt pursuant to the FDCPA. As a result, Plaintiff has not satisfied the commonality requirement.

17

c.      **Plaintiff Fails To Demonstrate Typicality Under Rule 23(a)(3).**

Similarly, Plaintiff does not meet the "typicality" requirement. To satisfy the typicality requirement, the claims or defenses of the representative party must be typical of the claims or defenses of the class. *See* Rule 23(a)(3). Further, "[t]he typicality inquiry . . . centers on whether the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d. 473, 483 (2d. Cir. 1295). Moreover, "the typicality requirement is intended to ensure that the position of the named plaintiff is not in conflict with the interests or legal theories of other class members." *Id.* at 184. "To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial." *Monaco v. Stone,* 187 F.R.D. 50, 67 (E.D.N.Y. 1999); *Bakalar v. Vavra,* 237 F.R.D. 59, 67-68 (S.D.N.Y. 2006). Thus, "[a] proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Id.* Although the "commonality" and "typicality" requirements tend to merge, the typicality element provides that if proof of the representatives claims would not necessarily prove all the proposed class members' claims, the representative's claim are not "typical" of the proposed class members' claims. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S.147, 157-58 (1982).

Plaintiff asserts that her "claims arise out of the same course of conduct and are based on the same legal theories as those of the Class members." (Docket No. 49 at p. 5). However, Plaintiff's claims are not typical of the class members. As stated above, there is no way to demonstrate that Plaintiff's claims are typical of the class members because there is absolutely no way to determine that any of the putative class members incurred an obligation that constitutes a consumer debt under the FDCPA. This crucial issue differentiates Plaintiff's claim from that of each of the other potential class members and

18

demonstrates that Plaintiff's claims are not typical to the claims of the prospective class members. Accordingly, Plaintiff cannot satisfy the typicality requirement.

### E.   PLAINTIFF FAILS TO ESTABLISH THAT THE PROPOSED CLASS MEETS THE REQUIREMENTS UNDER RULE 23(b)(3).

Under Rule 23(b)(3), a class may only be certified if, in addition to the requirements of 23(a), "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods of fair adjudication of the controversy." Rule 23(b); see *Amchem Products v. Windsor,* 521 U.S. 591, 615 (1997). Predominance is similar to Rule 23(a)'s requirement of commonality; however, it is a much more demanding analysis. *Id.,* at 623-624. Additionally, with respect to predominance, "'[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.'" In analyzing the superiority requirement, a court must address "the difficulties likely to be encountered in the management of a class action." Rule 23(b)(3)(D).

#### 1.   Class Certification Is Improper Because Questions Affecting Individual Members Predominate The Common Fact Of The Class.

Plaintiff's FDCPA claims do not create common questions of law or fact which "predominate over any questions affecting only individual members. Rule 23(b)(3). The predominance requirement necessitates that the proposed class be "sufficiently cohesive to warrant adjudication by representation. *Amchem Prods.* 521 U.S. at 623. This standard is "'far more demanding' than the commonality requirement of Rule 23(a), 'requiring more than a common claim.'" *Id.,* at 623-624. Further, the focus of the predominance inquiry is on whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 285 (3d Cir. 2011). Moreover, class certification is improper "if the merits of the claim turns on the defendant's individual dealings with each plaintiff." *Bolin v. Sears Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000).

19

In this matter, common issues of law or fact do not predominate over the individual issues that would arise with the proposed class of the thousands of individuals. The key issue that would arise is whether each of the members of the class received a letter related to a "consumer" obligation under the FDCPA. Plaintiff is unable to prove that an FDCPA claim can be determined on a class-wide basis because it will be necessary to individually depose each putative class member regarding the underlying nature of their obligations. Therefore, class certification is not appropriate because it fails to satisfy the Rule 23(b) predominance requirement.

2.    **Class Certification Is Improper Because Questions Affecting Individual Members Predominate The Common Law Of The Class.**

National class actions consisting of consumers from all states may raise applicable choice of law rules calling for the application of different laws to the various class members.  If that is the case, common issues may not predominate. *Johnson v. Nextel Communications Inc.,* 780 F.3d 128 (2d. Cir. 2015) ("The application of the different jurisdictions' laws therefore renders individual issues predominant and undercuts the superiority of trying the common issues on a class wide basis. Although "the specter of having to apply different substantive laws does not necessarily warrant refusing to certify a class", where, as here, the variations in state law present "insuperable obstacles" to determining liability bases on common proof, such variations defeat the predominance of common issues and the superiority of trying the case as a class action.")  It is not precisely the case that "individual" issues predominate, rather that the application of each state's law to its own citizens' claims means that legal issues are common across 50 different groups rather than across the whole class.  This has left some courts to conclude either that common issues do not predominate or that a nationwide class action is unmanageable and therefore not a superior method of litigation.

The Plaintiff bears the burden of showing that application of substantive laws from multiple jurisdictions does not defeat predominance.  Courts have rejected certification when proponent's

choice of law analysis was insufficiently thorough.  Appellate courts have also decertified classes when the district court conducted only a cursory examination of choice of law issues before deciding to apply the substantive law of the forum jurisdiction.  In re *U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108, 127 (2d Cir. 2013).  ("The crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues").

Plaintiff has failed to make any attempt to address choice of law issues to meet its burden of common law.  For this reason alone, Plaintiff's class certification motion must fail.  Regardless of this failure, Defendants now cite to conflicting case law to that of the *Avila* and *Carlin* case law authority.  For example, the *Avila,* issue has only reached the courts of the Second and Seventh Circuit Court of Appeals which have specifically addressed the need for collectors of debt to notify consumers of accruing interest. *Avila*, 817 F.3d at 76 (2d Cir. 2016) and *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F. 3d 872 (7th Cir. 2000).  The remaining Circuit Courts have yet to rule on the necessity of *Avila* disclosures.  See, *Santibanez v. Nat'l Credit Sys.,* 2017 U.S. Dist. LEXIS 4519 (D. Or. 2017) (9th Circuit has not specified precise information a debt collector must set forth to satisfy).  *Deporter v. Credit Bureau of Carbon County,* LEXIS 55345 (Dist. Col. 2015) (same for 10th Circuit has not specified precise information a debt collector must set forth to satisfy §1692g).  Further, there appears to be no other Circuit Court case law authority outside the Second Circuit Court of Appeals addressing the *Carlin* decision.

Other lower courts have taken a contrary position to that of *Avila,* that §1692g disclosure does not imply an obligation to disclose that interest is accruing – instead, these cases hold that the FDCPA ruling requires that a validation letter state the total amount of the debt (including accrued interest and any other charges) as of the date the letter is sent. See, *Jerri Califf v. Weltman, Weinberg & Reis*

*Co.,* Case No.: 1:17-cv-108, (W.D. Mich. 2017)  (the phrases "[b]alance due as of" and "[a]s of the date of this letter you owe the amount listed above" mean exactly what they say: that the current balance as of that day is what is reported in the letter. The least sophisticated consumer would understand that that was the current outstanding amount on her debt. The "as of" language speaks only of that respective date; it is not intended to imply that the debt will increase due to accumulated interest, that it will decrease due to a payment, or it will remain consistent. Those are possibilities of things that may occur, but not a meaning of the phrase itself. To find "balance due as of" false, deceptive, or misleading would be a "bizarre or idiosyncratic interpretation[]," let alone a materially false or misleading statement); see also, *Bodine v. First Nat. Collection Bureau, Inc.* 2010 U.S. Dist. LEXIS 131352 at *2 (D.N.J. Dec. 13, 2010); *Schaefer v. ARM Receivable Mgmt., Inc.,* 2011 U.S. Dist. LEXIS 77828 at *5 (D. Mass. July 19, 2011).

Plaintiff has failed to make any attempt to meet its burden of establishing "predominance" of uniform interpretation of *Avila* or *Carlin* type precedent.  For this reason alone, Plaintiff's class certification motion must fail.  Regardless of this failure, and for the reasons discussed at greater length below, Defendants have clearly presented a plethora of conflicting case law interpretation of what precise information is required of a debt collector to satisfy § 1692g(1)(a) or e.  Again, Plaintiff would not be able to establish predominance under Fed. R. Civ. P. 23(b)(3).

> ### 3.   Class Certification Is Improper Because It Is Not The Superior Method Available To Adjudicate This Matter.

A class action must represent the best 'available method for the fair and efficient adjudication of the controversy. Rule 23(b)(3). "Rule 23(b)(3)'s superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 533-34 (3d Cir. 2004). Further, a court should consider "the class members' interests in individually controlling

litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action. Rule 23(b)(3)(A)—(D).

In the present case, the class can only be made up of people who satisfy the class definition by qualifying as "consumers" under the FDCPA. Including even a single "non-consumer" in the class is a violation of Defendant's due process rights. Thus, in order to ensure Defendant's due process rights are not violated, there needs to be complete certainty that every individual member of the class is a consumer under the FDCPA. In the present case, Plaintiff has failed to establish any reasonable method for identifying prospective class members and ensuring that those class members are in fact consumers. The only real way to determine the nature of each potential class member's debt, and thus satisfy the due process requirement of this case, is to individually depose each and every single individual who received the letter at issue. This would require thousands of individual depositions at great cost and time to the parties, the court, and the potential class members. There is no rational argument that can be made to establish that this is a superior method of adjudicating the claims at issue in this case.

It is likely that the putative class members will recover significantly less than the statutory amount of damages provided for under 15 U.S.C. § 1692k(2)(A), $1,000.00, than if they pursued individual claims. For example, in *Gallego v. Northland Group Inc.*, 814 F.3d 123 (2d Cir. 2016), the consumer debtor brought a class action against a debt collector alleging violations of the FDCPA by sending him and other class members a collection letter that gave a call-back number but did not specify the name of the person at that number. The district court dismissed the case for lack of subject matter jurisdiction on the ground that it did not raise a colorable federal question. The district court also denied the debtor's motion for class certification. On appeal, the Second Circuit Court of Appeals held that although the FDCPA claims lacked merit, they were not so frivolous that they failed to raise a colorable federal question sufficient to support federal

jurisdiction. The court further concluded that the district court did not abuse its discretion in denying class certification. As to class certification, the court found that denial of certification was within the range of permissible decisions where it appeared that the intended result of the settlement was "mass indifference, a few profiteers, and a quick fee to clever lawyers." *Gallego,* 814 F. 3d. at 129. The court drew upon the *de minimis* recovery of the putative class. Specifically, the court concluded that Rule 23(b)(3)'s superiority requirement was not met, focusing upon the "meaningless" amount — 16.5 cents, by the court's calculation — that each putative class member would receive from the settlement if all of the estimated 100,000 class members filed a claim. *Id.* The court also found the proposed agreement reached by the parties to be inadequate. The release provided that all class members who did not affirmatively opt out of the settlement would release their claims against the debt collector, not only under the FDCPA, but also under other federal laws, "state law, New York City law (including the New York City Administrative Code), common law, territorial law, or foreign law." *Id.* The court found that the absentee class members' interests would not be best served by a settlement that required them to release any and all claims relating to similar letters from the debt collector in exchange for as little as 16.5 cents — or for no money at all. *Id.*

The Plaintiff presents little to no concrete information with respect to the anticipated recovery to the class. For that reason alone, Plaintiff fails to meet its burden of establishing superiority under Rule 23(b)(3).

## IV.   CONCLUSION

For these reasons, Defendant Weltman, Weinberg & Reis, Co., LPA, respectfully requests that Plaintiff's Motion for Class Certification be denied in its entirety.

Dated: December 31, 2018

/s/: Glenn M. Fjermedal
Glenn M. Fjermedal, Esq.
DAVIDSON FINK LLP
*Attorneys for Defendant*
28 East Main Street, Suite 1700
Rochester, New York 14614