**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHRISTY BITZKO, individually and on behalf of
all others similarly situated,

                                 Plaintiff,

v.

WELTMAN, WEINBERG & REIS CO., LPA,

                                 Defendant.

1:17-CV-00458 (BKS/DJS)

**Appearances:**

*For Plaintiff and as Interim Class Counsel:*[1]
David M. Barshay
Barshay Sanders, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530

*For Defendant:*
Glenn M. Fjermedal
Davidson Fink, LLP
28 East Main Street, Suite 1700
Rochester, New York 14614

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Christy Bitzko brings this action against Defendant Weltman, Weinberg & Reis

Co., LPA ("WWR"), alleging that it engaged in unlawful debt collection practices in violation of

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, by sending her a debt

collection letter: (i) on law firm letterhead even though WWR attorneys were not meaningfully

---

[1] United States Magistrate Judge Daniel J. Stewart appointed Barshay Sanders, PLLC as Interim Class Counsel on
May 18, 2018. (Dkt. No. 37).

involved in its creation, in violation of 15 U.S.C. § 1692e; (ii) that failed to provide a complete notice of the "amount of debt" she owed, in violation of 15 U.S.C. § 1692g; and (iii) that failed to inform her that her debt may increase, in violation of 15 U.S.C. § 1692e. (Dkt. No. 13). Defendant has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 45). Plaintiff has opposed Defendant's motion and cross-moved for summary judgment as to the second and third alleged violations. (Dkt. Nos. 48, 50). Plaintiff has also filed a motion for class certification, (Dkt. No. 49), which Defendant has opposed. (Dkt. No. 52).

For the reasons stated below, Defendant's motion is denied in part and granted in part, and Plaintiff's partial summary judgment motion is denied in part and granted in part. Plaintiff's motion for class certification is granted in part.

## II.    FACTS[2]

### A.    Debt Collection Letter

Prior to 2016, Plaintiff obtained a student loan for her "personal education" in the amount of approximately $13,000. (Dkt. No. 48-1, ¶¶ 2–3; Dkt. No. 51-1, ¶ 2–3). Plaintiff "fell behind on payments owed on the loan" and the loan accrued interest and late fees. (Dkt. No. 48-1, ¶¶ 4–5; Dkt. No. 51-1, ¶¶ 4–5). National Collegiate Student Loan Trust ("NCSLT") is the current creditor on the loan. (Dkt. No. 45-5).

WWR is a law firm that, among other things, provides debt-collection services to clients. (Dkt. No. 45-1, ¶¶ 1–2). On August 4, 2016, NCSLT's loan servicer, Transworld Systems Inc. ("TSI") retained Defendant to collect on Plaintiff's student loan account. (*Id.* ¶ 27). TSI provided

---

[2] The facts have been drawn from Defendant's statement of material facts, (Dkt. No. 45-1), Plaintiff's response, (Dkt. No. 50-1), Plaintiff's statement of material facts (Dkt. No. 48-1), and Defendant's response (Dkt. No. 51-1), and the attached exhibits, depositions, and declarations. In considering the parties' cross-motions for summary judgment, the Court construes the facts in the light most favorable to the non-moving party.

WWR with a computer file containing information about Ms. Bitzko's account, including her name, address, social security number, original creditor, current creditor, and details about prior payments and interest. (Dkt. No. 45-4, ¶ 31).

WWR sent Plaintiff a debt collection letter dated August 11, 2016. (Dkt. No. 45-4, ¶ 33). It was sent out on WWR's letterhead, which reads: "WELTMAN, WEINBERG & REIS, Co., LPA" in large bold black letters. (*Id.*; Dkt. No. 45-5). Directly below, in smaller letters, it reads "ATTORNEYS AT LAW." (*Id.*). The body of the letter states:

> Please be advised that the above referenced account has been placed with us to collect the outstanding balance due and owing on this account to the current creditor referenced above. As of the date of this letter you owe the amount listed above. Therefore, it is important that you contact us at 1-800-570-3931 to discuss an appropriate resolution for this matter. Additionally, you may be able to pay on your account online via our web pay website at www.wwrepay.com.
>
> This communication is from a debt collector attempting to collect this debt for the current creditor and any information obtained will be used for that purpose. Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this letter, we will assume that the debt is valid. If you notify us in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment and a copy of such verification or judgment will be mailed to you.  If you request in writing within the thirty (30) day period, we will provide you with the name and address of the original creditor if different from the current creditor.
>
> Thank you for your attention to this matter.
>
> Sincerely,
> Weltman, Weinberg & Reis Co., L.P.A

(*Id.*). The letter also contains the following information:

| | |
|---|---|
| Balance Due as of August 11, 2016: | $13,750.28 |
| Account Charge-Off Date: | 02/01/2016 |
| Total Amount Due at Charge-Off: | $13,359.86 |
| Total Interest Charged Since Charge-Off: | $390.42 |

Total Charges and Fees Since Charge-Off:    $.00
Total Payment(s) Made Since Charge-Off:    $.00

(*Id*.).

### B.   WWR Procedures and Attorney Involvement

WWR has submitted a declaration by Eileen Bitterman, WWR's compliance officer and a shareholder, regarding attorney involvement in the creation of the debt collection letter Plaintiff received. (Dkt. No. 45-4). According to Ms. Bitterman, the letter was "based on a template which was created and reviewed by shareholder attorneys who own the firm, and attorney employees who work there." (*Id*. ¶ 29). WWR estimates that "the approximate number of individuals who were sent letters during the subject time period . . . [is] over 58,000." (Dkt. No. 52, at 11).

In addition to creating and reviewing demand letter templates, attorneys are involved in many aspects of WWR's debt-collection activities. (Dkt. No. 45-4, ¶¶ 11–26). Before demand letters are sent, "WWR attorneys are involved in bringing clients to the firm, drafting client contracts, checking their reputation, interacting with the client, and discussing the available data and documentation, the history of their portfolio and types [of] accounts, which consumers are represented by attorneys . . . reviewing the clients procedures and policies, and evaluating whether the client is a trustworthy and legally compliant creditor." (*Id*. ¶ 16). After clients are accepted by WWR, attorneys then "obtain warranties as to the validity put forth for collection . . . including calculation of interest rates to the extent applicable and distinguishing interest accounts and those that are not." (*Id*. ¶ 17).

WWR attorneys use their legal knowledge to "scrub" the data provided by clients. Scrubbing "is a process by which outside vendors use criteria established by WWR's lawyers to flag consumers who should not be sent collection letters." (*Id*. ¶ 18).

WWR debt collection policies and procedures are "drafted by attorney shareholders, go through several layers of attorney review, and are eventually approved by attorney Board members. They are also enforced by attorneys." (*Id*. ¶ 21). WWR maintains a formal compliance program that is developed by its attorneys. (*Id*. ¶ 19). This program ensures compliance with the FDCPA and other federal and state laws. (*Id*. ¶¶ 7, 9–10). Part of this process entails WWR's Compliance Audit Department reviewing the demand letter templates drafted by its attorneys. (*Id*. ¶ 24).

## III.   MOTION FOR SUMMARY JUDGMENT

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). These facts must be construed "in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d

775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)). Upon cross-motions for summary judgment, the Court must "in each case constru[e] the evidence in the light most favorable to the non-moving party." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 621–22 (2d Cir. 2008); *see also Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

**B.    Discussion[3]**

Congress enacted the FDCPA in order to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

The Second Circuit has instructed that the purposes underlying the FDCPA should guide judicial decision-making in two ways. *Avila v. Riexinger & Assocs., LLC,* 817 F.3d 72, 75 (2d

---

[3] Defendant asserts summarily that Plaintiff lacks standing without any citation to the applicable Second Circuit law. (Dkt. No. 51, at 10). The Second Circuit has held that Sections 1692e and 1692g of the FDCPA "protect an individual's concrete interests, so that an alleged violation of these provisions satisfies the injury-in-fact requirement of Article III." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018). This is because violations of these sections might deprive people "of information relevant to the debt . . . posing a 'risk of real harm' insofar as it could hinder the exercise of [the] right to defend or otherwise litigate [the] action." *Id.* at 81–82 (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016)). As such, the Court finds that Plaintiff has standing.

Cir. 2016). First, as a statute focused on consumer protection, courts should construe the FDCPA "in liberal fashion [to achieve] the underlying Congressional purpose." *Avila,* 817 F.3d at 75 (quoting *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013)).

Second, in order to protect vulnerable populations from abusive and misleading practices, the FDCPA requires "debt collection letters be viewed from the perspective of the 'least sophisticated consumer.'" *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1318–19 (2d Cir. 1993)). This standard asks how the least sophisticated consumer—"one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer"—would understand the collection notice. *Avila*, 817 F.3d at 75 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). The least sophisticated consumer is "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon*, 988 F.2d at 1319. A "collection notice may violate the FDCPA when it is sufficiently ambiguous to give rise to a reasonable, but inaccurate, interpretation." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019).

### 1.     False Representation of Attorney Involvement – Section 1692e

Plaintiff argues that Defendant violated FDCPA §§ 1692e(3), 1692e(5), and 1692e(10) by sending her a debt collection notice on law firm letterhead, which falsely represented that the communication was from an attorney, "falsely raised the specter of potential legal action," and used false representation or deceptive means to collect a debt. (Dkt. No. 50-2, at 6). Defendant contends it is entitled to summary judgment on this claim for two reasons. First, its use of "law firm letter head" is not false or misleading but "simply a truthful representation" of the "factual reality that Defendant is a law firm." (Dkt. No. 45-7, at 17) (emphasis omitted). Second, its attorneys were meaningfully involved in the letter sent to Plaintiff and so Plaintiff has failed to

raise a material issue of fact as to whether the letterhead was misleading. (Dkt. No. 45-7, at 17–20). The Court is unpersuaded by both contentions.

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation in connection with the collection of any debt." Section 1692e details a list of violations, including "(3) The false representation or implication that . . . any communication is from an attorney," "(5) The threat to take any action that cannot legally be taken or that is not intended to be taken," and "(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." This list is non-exhaustive, and "the use of *any* false, deceptive, or misleading representation in a collection letter violates § 1692e—regardless of whether the representation in question violates a particular subsection of that provision." *Clomon*, 988 F.2d at 1320.

WWR asserts that because it truthfully identified itself as a law firm on the letterhead, there is no violation of the FDCPA. (Dkt. No. 45-7, at 13). The Second Circuit has recognized that debt collection letters printed on "law firm letterhead, *standing alone*, does represent a level of attorney involvement to the debtor receiving the letter. And if the attorney or firm had not, in fact, engaged in that implied level of involvement, the letter is, therefore, misleading within the meaning of the FDCPA." *Greco*, 412 F.3d at 364. A debt collection notice on law firm letterhead thus violates § 1692e unless (1) the attorney or law firm was meaningfully involved in the debt collection process, *Clomon*, 988 F.2d at 1320, or (2) it includes a clear disclaimer explaining the limited extent of the law firm's involvement in the debt collection. *Greco*, 412 F.3d at 364.

WWR's collection letter stated that: "This communication is from a debt collector attempting to collect this debt for the current creditor." (Dkt. No. 45-5). However, this statement falls short of the disclaimer in *Greco*, which stated: "At this time, no attorney with this firm has

personally reviewed the particular circumstances of your account." 412 F.3d at 361; *see also*

*Wendel v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, 689 F. App'x 45, 46 (2d Cir. 2017) (holding

that a debt-collection letter that contained the same disclaimer as *Greco* and an explanation that

"[t]his communication is from a debt collector" did not violated the FDCPA). Courts in the

Second Circuit have found that in order for a disclaimer to successfully dispel the notion that a

letter printed on law firm letterhead entailed meaningful attorney review, it must be "direct and

clear." *Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 302 (E.D.N.Y. 2005)

(holding that a disclaimer that contained contradictory language about the level of attorney

involvement was not adequate). Here, WWR's letter also stated that the account "has been

placed with us to collect the outstanding balance," which may imply action by the law firm in its

legal capacity. (Dkt. No. 45-5). WWR's identification of itself as a debt collector may not

adequately dispel the least sophisticated consumer's assumption that a letter on law firm

letterhead entails meaningful attorney review. The Court thus finds that WWR identifying itself

as a debt-collector is not sufficiently direct and clear enough to entitle it to summary judgment

on this claim.[4] The Court now turns to Defendant's two primary arguments — that it is not

misleading to truthfully identify itself as a law firm, and its attorneys are meaningfully involved

in its debt collection activities.

Defendant attempts to rely on the Supreme Court's decision in *Sheriff v. Gillie*, 136 S. Ct.

1594 (2016), to support its contention that the use of its letterhead is licit under the FDCPA

because of its status as a law firm. In *Sheriff*, however, the Court did not consider the issue here:

---

[4] Defendant's reliance on *Daniels v. Solomon & Solomon P.C.*, 751 F. App'x 254, 257 (3d Cir. 2018) is misplaced, because that case is factually distinguishable. In that case, the letterhead only contained the name "Solomon & Solomon, P.C." and did not state the fact that it was a law firm. *Id.* Therefore, the disclaimer that the letter was from a debt collector was not contradicted. *Id.* In this case, the letterhead included the words "Attorneys at law" in larger and bolder letters than the information that the letter is "from a debt collector." (Dkt. No. 45-5).

whether an attorney's letter was misleading because there was no meaningful attorney involvement. Instead, the Court considered whether it was misleading for private attorneys, who had been appointed by the Ohio Attorney General's Office as special counsel to represent the state in collecting debts, to contact debtors as debt collectors using the Attorney General's letterhead with the private attorneys' signatures as "special" or "outside counsel," followed by their contact information. *Sheriff*, 136 S. Ct. at 1600–01. The Court considered whether the letters were misleading, under the general prohibition of 1692e as well as two specific prohibitions not at issue here: a false representation of approval by state officials (1692e(9)) and the use of a name other than the debt collector's true name, (1692e(14)). *Id.* at 1601–02. The Court found that the letters were not because the representations were truthful. *Id.*

The holding in *Sheriff* is inapposite here. *See Villalobos v. Meyer Njus Tanick, P.A.*, No. 19-cv-545, 2019 WL 3562663, at *4, 2019 U.S. Dist. LEXIS 130640, at *11 (N.D. Ill. Aug. 5, 2019) (noting that in *Sheriff*, "[t]he Court did not evaluate a meaningful review claim, nor did it conclude any such cause of action fails where the substance of the communication was unchallenged."); *Gibbons v. Weltman, Weinberg & Reis Co., LPA*, No. 17-cv-1851, 2018 WL 5720750, at *6, 2018 U.S. Dist. LEXIS 187148, at *16 (E.D. Pa. Oct. 31, 2018) (holding *Sheriff* factually distinguishable and denying Defendant's summary judgment motion in a case with essentially the same facts and legal arguments). As *Clomon* makes clear, because WWR represented its status as a law firm on the letterhead, its attorneys must have been meaningfully involved in the creation of the debt collection notice issued to Plaintiff in order to avoid liability under § 1692e. *Clomon*, 988 F.2d at 1321; *see also Miller v. Wolpoff & Abramson, L.L.P.* ("*Miller I*"), 321 F.3d 292, 307 (2d Cir. 2003). Defendant is not, as it argues, sheltered from liability under § 1692e simply because it is in fact a law firm. WWR's status as a law firm is

precisely why the use of the letterhead, without a disclaimer or meaningful attorney involvement, can mislead or deceive debtors into believing that an attorney has evaluated their files. *See Clomon*, 988 F.2d at 1320.

Accordingly, the Court turns to WWR's second argument—that it is entitled to summary judgment because the evidence shows that its attorneys were meaningfully involved in sending the letter. (Dkt. No. 45-7, at 17–20). In *Clomon*, the Second Circuit discussed attorney involvement in the collection process as follows:

> [T]he use of an attorney's signature on a collection letter implies that the letter is "from" the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent . . . . [T]he use of an attorney's signature implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent. In a mass mailing, these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e.

988 F.2d at 1321.

The Second Circuit has therefore held that "some degree of attorney involvement is required" in order to satisfy Section 1692e. *Miller I*, 321 F.3d at 301. The attorney signing the letter must have "formed an opinion about how to manage the case," *Clomon*, 988 F.2d at 1321, and "merely being told by a client that a debt is overdue is not enough." *Miller I*, 321 F.3d at 304. Accordingly, courts in this Circuit have granted summary judgment when law firms have provided evidence that an attorney personally reviewed a debtor's file before a letter was sent. *See Mizrahi v. Network Recovery Servs.*, Inc., No. 98-cv-4528, 1999 WL 33127737, at *4, 1999 U.S. Dist. LEXIS 22145, at *12 (E.D.N.Y. Nov. 5, 1999) (holding that an attorney was

meaningfully involved because she conducted initial reviews of the debtor files for two to four hours and then divided them amongst herself and two paralegals for further in-depth review before letters were sent); *Kapeluschnik v. Leschack & Grodensky, P.C.*, No. 96-cv-2399, 1999 WL 33973360, at *5, 1999 U.S. Dist. LEXIS 22883, at *14 (E.D.N.Y. Aug. 26, 1999) (granting summary judgment because, *inter alia*, individual attorneys were assigned to "supervise the collection of information from creditors, and the sending of letters in each case" and the defendant "named a specific attorney who supervised and directed each plaintiff's case").

In addition to whether an attorney has personally reviewed a debtor's file before a letter is sent, the Second Circuit has articulated two other factors that influence whether attorney involvement is sufficiently "meaningful" for the purposes of the FDCPA. First, the court in *Miller I* suggested that an attorney who has familiarity with a "client's contracts and practices" may not need to engage in the same level of review of individual debtor's files. 321 F.3d at 304. In other words, "although *Miller* makes clear that an attorney may not rely *entirely* on his client's assertions about circumstances of an individual debtor, it also suggests where an attorney has reason to believe that the client is providing reliable information, some degree of reliance is permissible." *Miller v. Wolpoff & Abramson, L.L.P.* ("*Miller II*"), 471 F. Supp. 2d 243, 254 (E.D.N.Y. 2007). Second, courts look to the volume of cases that a law firm handles as a way of evaluating whether files are reviewed "with such speed that no independent judgment could be found to have been exercised." *Miller I*, 321 F.3d at 306; *see also Nielsen v. Dickerson*, 307 F.3d 623, 636 (7th Cir. 2002) (finding an attorney did not exercise professional judgment because "the brevity of [a three seconds per account] review lays bare its cursory nature"); *Boyd v. Wexler*, 275 F.3d 642, 645–6 (7th Cir. 2001) (finding the volume of cases a law firm handles relevant to whether summary judgment should be granted).

Defendant claims that it is entitled to summary judgment because its attorneys were meaningfully involved in every facet of its debt collection activities. (Dkt. No. 45-7, at 17). WWR urges the Court to resolve this case in its favor on these grounds based on proceedings in the Northern District of Ohio, where it was also a defendant. (Dkt. No. 45-7, at 17 (citing *Consumer Fin. Prot. Bureau v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 17-cv-817, 2018 WL 3575882 at *11, 2018 U.S. Dist. LEXIS 124630 at *29–30 (N.D. Ohio July 25, 2018)). In *Consumer Financial*, the court found that WWR's attorneys were "meaningfully and substantially involved in the debt collection process both before and after the issuance of the demand letters." 2018 WL 3575882 at *11, 2018 U.S. Dist. LEXIS 124630 at *29–30. In that case, similar evidence was offered that established that WWR attorneys were involved at various stages of the debt collection process, from creation of policies, client intake and evaluation, collection strategies, "scrubbing" client data, and creation and review of debt collection letter templates. 2018 WL 3575882 at *4–5, 2018 U.S. Dist. LEXIS 124630 at *8–16.

As in *Gibbons*, this Court concludes that the procedural and legal differences between the current case and *Consumer Financial* render it unhelpful to Defendant. *Gibbons*, 2018 WL 5720750 at *7, 2018 U.S. Dist. LEXIS 187148 at *19; *Consumer Fin.*, 2018 WL 3575882 at *11, 2018 U.S. Dist. LEXIS 124630 at *29–30. Procedurally, the Northern District of Ohio found meaningful attorney involvement only after denying summary judgment and conducting a full trial before an advisory jury. *Consumer Fin.*, 2018 WL 3575882 at *1, 2018 U.S. Dist. LEXIS 124630 at *2.

Moreover, the *Consumer Financial* court was not bound by Second Circuit precedent suggesting that sufficient professional judgment be exercised with Plaintiff's file such that the letter could be said to be from an attorney. *See Miller I*, 321 F.3d at 306 (explaining that if a law

firm "reviewed the collection files with such speed that no independent judgment could be found to have been exercised, and then issued form collection letters with the push of a button, a reasonable jury could conclude that [it] lacked sufficient professional involvement"); *Clomon*, 988 F.2d at 1320 (finding violation of Section 1692e where there was evidence that that the attorney "did not review each debtor's file;" "did not determine when particular letters should be sent;" "did not approve the sending of particular letters based upon the recommendations of others;" and "did not see particular letters before they were sent" or "even know the identities of the persons to whom the letters were issued," explaining that  "the fact that [the attorney] played virtually no day-to-day role in the debt collection process supports the conclusion that the collection letters were not 'from' [the attorney] in any meaningful sense of that word").

In this case, Defendant has offered evidence that attorneys are involved in WWR's debt collection practices at a high level (e.g., creating policies and procedures, vetting clients, drafting demand letter templates). (Dkt. No. 45-4, ¶¶ 11–26). However, no evidence has been offered that demonstrates an attorney personally reviewed or exercised professional judgment with respect to Plaintiff's file before the letter was sent. Ms. Bitterman's affidavit states that attorneys "assess issues that may arise with statute of limitations, arbitration clauses, choice of law issues . . . [that] must be addressed by an attorney before a demand letter such as Letter A is sent" (Dkt. No. 45-4, ¶ 23), but does not describe how an attorney exercised that professional judgment here. If anything, the high volume of letters sent by WWR (approximately 58,000 during the putative class period) suggests any review was limited. *See Miller I*, 321 F.3d at 306 Additionally, while Ms. Bitterman's affidavit further states that WWR attorney are involved with "checking [their clients'] reputation[s]," "discussing the available data and documentation," and "reviewing the clients procedures and policies," it did not provide any information specific to WWR's

relationship with TSI. (Dkt. No. 45-4, ¶ 16). So, while "some degree of reliance is permissible" where "an attorney has reason to believe that the client is providing reliable information," there is not enough information in the record about WWR's knowledge of TSI's contracts and practices to entitle it to summary judgment on this claim. *Miller II*, 471 F. Supp. 2d at 254.

The Court accordingly finds that Plaintiff has raised an issue of fact as to whether WWR "lacked sufficient professional involvement with plaintiff's file that the letters could be said to be from an attorney." *Miller I*, 321 F.3d at 306. Accordingly, Defendant's motion for summary judgment on this claim is denied.[5]

### 2.    The Amount of Debt – Section 1692g

Plaintiff argues Defendant violated FDCPA § 1692g by sending her a debt collection notice without including a true accounting of the amount of her debt, entitling her to summary judgment. (Dkt. No. 48-3, at 10–12). Defendant contends it is entitled to summary judgment on this claim because the letter informed Plaintiff of her "balance due as of August 11, 2016" (the date the letter was issued), satisfying Section 1692g's requirement that the amount of debt be disclosed. (Dkt. 45-7, at 26).

Section 1692g of the FDCPA requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication . . . send the consumer a written notice containing . . . (1) the amount of the debt." 15 U.S.C. § 1692g(a). A recent Second Circuit decision, issued after the parties briefed the current motion, clarified that the "amount of debt" requirement under Section 1692g(a)(1) is satisfied by "the total, present

---

[5] Defendant also argues it is entitled to summary judgment because the meaningful involvement doctrine is a legal fiction not contained within the text of the FDCPA. (Dkt. No. 45-7, at 20). Regardless of the whether this argument has merit, this court is bound by Second Circuit precedent. *See Miller I*, 321 F.3d at 301; *Clomon*, 988 F.2d at 1321.

quantity of money that the consumer is obligated to pay." *Kolbasyuk v. Capital Mgmt. Servs.,
LP*, 918 F.3d 236, 240 (2d Cir. 2019).

In *Kolbasyuk,* the defendant sent the plaintiff a debt collection letter stating: "As of the
date of this letter, you owe $ 5918.69" but that the amount due may increase "[b]ecause of
interest, late charges, and other charges." *Id.* at 238. The plaintiff argued this violated Section
1692g because the "letter did not include the required 'amount of the debt' because it failed to
inform him, *inter alia*, 'what portion of the amount listed is principal,' 'what 'other charges'
might apply,' 'if there is 'interest,' 'when such interest will be applied,' and 'what the interest
rate is.'" *Id.* at 240. The court rejected this expansive reading of the meaning of the "amount of
the debt" that is required to be disclosed under Section 1692g, explaining:

> The word "amount" signifies a total, present quantity. *See Amount*,
> Oxford English Dictionary (2d ed. 1989) (defining "amount" as "the
> sum total to which anything mounts up or reaches . . . in quantity").
> The word "debt," as defined in the FDCPA, signifies an obligation
> to pay money. *See* 15 U.S.C. § 1692a(5) (defining "debt" as "any
> obligation or alleged obligation of a consumer to pay money arising
> out of a transaction"). The "amount of the debt," then, signifies the
> total, present quantity of money that the consumer is obligated to
> pay. And that is exactly the figure that [defendant] provided: the
> total, present quantity of money that [plaintiff] was obligated to pay
> Barclays as of the date of [defendant's] letter.

*Id*.

Plaintiff argues that she is entitled to summary judgment under the Second Circuit's
decision in *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 210 (2d Cir. 2017). In *Carlin*, the
plaintiff was mailed a debt collection letter that included a "Payoff Statement" which allowed
him to pay the "Total Amount Due" stated in the letter through a future date. *Id*. at 211. The
"Total Amount Due" was a future estimate, rather than the actual amount due on the date of the
letter. Unlike here, in *Carlin* the total amount due included unspecified "estimated fees, costs

[and] additional payments" without any "indication as to what the unaccrued fees are or how they are calculated," and the letter did not inform the debtor of the amount owed as of the time of the notice. 852 F.3d at 216. This violated Section 1692g because "[defendant] had only provided [plaintiff] with an estimated, future amount that Carlin *might* owe, rather than the total, present amount that [plaintiff] *did* owe." *Kolbasyuk,* 918 F.3d. at 241.

In *Kolbasyuk*, the court explicitly distinguishes *Carlin* because "an estimated, forward-looking 'Payoff Statement' may need to inform the consumer of what she will need to pay to resolve the debt at any given moment in the future or provide an explanation of any fees and interest that will cause the balance to increase. But where, as here, the debt collector has already informed the consumer of the minimum amount she owes at the time of the notice, *Carlin* simply lacks relevance." 918 F.3d at 241 (internal quotation marks and citations omitted).

In this case, Defendant provided Plaintiff with her balance due as of August 11, 2016 (the date the letter was issued). It did not contain a payoff statement with an estimate of what she might owe in the future. The balance due gave the "total, present amount of money" Plaintiff owed, and thus Defendant did not violate Section 1692g. Accordingly, as there are no material issues of fact requiring trial, Defendant is entitled to summary judgment on this claim.

### 3.   The Debt Increase – Section 1692e

Plaintiff alleges Defendant violated Section 1692e when its letter failed to disclose that her balance may increase. (Dkt. No. 48-3, at 13–19). Defendant contends that its use of the phrase "balance due as of [date]" and its itemized accounting of Plaintiff's debt adequately informed her that her balance may increase. (Dkt. No. 45-7, at 27–29). Both parties move for summary judgment.

Section 1692e of the FDCPA prohibits "false, deceptive, or misleading representations." 15 U.S.C. § 1692e. In *Avila*, the Second Circuit considered whether the collection notices at

17

issue, which "stated each plaintiff's 'current balance' but did not disclose that this balance was continuing to accrue interest or that, if plaintiffs failed to pay the debt within a certain amount of time, they would be charged a late fee" was a "'false, misleading, or deceptive' practice prohibited by Section 1692e." 817 F.3d at 74–75. The court held that the failure to disclose that the consumer's balance was increasing violated Section 1692e because a "reasonable consumer could read the notice and be misled into believing that she could pay her debt in full by paying the amount listed on the notice. In fact, however, if interest is accruing daily, or if there are undisclosed late fees, a consumer who pays the 'current balance' stated on the notice will not know whether the debt has been paid in full." *Avila,* 817 F.3d at 76. The Circuit explained that requiring debt collectors to disclose that a balance is subject to future interest and fees "best achieves the Congressional purpose of full and fair disclosure to consumers that is embodied in Section 1692e. It also protects consumers such as plaintiffs who may hold the reasonable but mistaken belief that timely payment will satisfy their debts." *Id.*

In *Avila,* the Second Circuit adopted the Seventh Circuit's "safe harbor" approach, and held that a debt collector "will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase" if the collection notice "either accurately informs the consumer that the amount of the debt stated in the letter will increase over time, or clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date." *Id.* at 77 (citing *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000)). Though the debt collector is not required to use any particular disclosure language, it must inform the consumer if the balance will increase. If the balance will only increase because of a contingent future event (like attorney's fees that might be awarded after litigation), then

disclosure is unnecessary. *Derosa v. Computer Credit, Inc.*, 295 F. Supp. 3d 290, 299 (E.D.N.Y. 2018). Additionally, if the balance is not increasing, then disclosure is also unnecessary. *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 215 (2d Cir. 2018).

Plaintiff contends that Defendant violated *Avila* by failing to include safe harbor language informing her that her balance may increase, in violation of Section 1692e. Because her debt was accruing interest at the time she received the notice,[6] Defendant was required to inform her that the amount of debt stated in the letter will increase over time (or clearly state that the amount set forth will be considered full satisfaction of the debt if paid before a specific date). *Avila*, 817 F.3d at 77.

Defendant seeks summary judgment on this claim for three reasons. First, its letter was not misleading because there is only one reasonable interpretation of "balance due as of August 11, 2016": that the balance may increase. Second, the itemization of Plaintiff's debt negates the need for an *Avila* interest disclosure. Third, nothing in its letter was materially misleading.

Given the lack of safe harbor language, Plaintiff is entitled to summary judgment. Defendant's contention that its use of "balance due as of" language or itemization of the past charges would put a least sophisticated consumer on notice that her balance will increase over time is unpersuasive.

First, Defendant argues that using the language "balance due as of" rather than "current balance" puts its letter outside the ambit of *Avila* because the only reasonable interpretation of the "balance due as of" phrase is that the balance may increase. However, *Avila* made clear that failing to disclose that a stated balance may increase is misleading because a consumer might

---

[6] *See* Dkt. No. 51, at 10 ("Total Interest Charged Since Charge-Off of $390.42 properly reflected that interest continued to accrue on Ms. Bitzko's Federal student loan, in the same fashion as most delinquent Federal student loans.").

incorrectly but reasonably believe that she could pay her debt in full by paying the amount listed

on the notice. 817 F.3d at 76. The least sophisticated consumer could just as easily be misled

when the amount due is phrased as "balance due as of [date]" rather than "current balance."

While the "balance due as of [date]" language may adequately inform a sophisticated

consumer that she could not pay that amount in the future to clear her debt, the correct standard

is how the least sophisticated consumer ("one not having the astuteness of a 'Philadelphia

lawyer' or even the sophistication of the average, everyday, common consumer") would interpret

the collection notice. *Russell*, 74 F.3d at 34. The Court does not find that the difference between

"balance due as of [date]" and "current balance" warrants a different consideration under *Avila.*.

Second, Defendant argues that its itemization of Plaintiff's debt accurately informed her

that her balance may increase due to interest. The letter mailed to Plaintiff listed the following

information:

| | |
|---|---|
| Balance Due as of August 11, 2016: | $13,750.28 |
| Account Charge-Off Date: | 02/01/2016 |
| Total Amount Due at Charge-Off: | $13,359.86 |
| Total Interest Charged Since Charge-Off: | $390.42 |
| Total Charges and Fees Since Charge-Off: | $.00 |
| Total Payment(s) Made Since Charge-Off: | $.00 |

(Dkt. No. 45-5). Defendant contends that including the line item "Total Interest Charged Since

Charge-Off $390.42" informs Plaintiff that post charge-off interest on her debt was continuing to

accrue, thereby satisfying *Avila*. This argument assumes that the least sophisticated consumer

understands what a "charge-off" is. But this "presumes a level of sophistication inconsistent with

that posited by *Avila*." *Islam v. Am. Recovery Serv. Inc.*, No. 17-cv-4228, 2017 WL 4990570, at

*5, 2017 U.S. Dist. LEXIS 180415, at *13 (E.D.N.Y. Oct. 31, 2017). Moreover, even if the least

sophisticated consumer understands what a "charge-off" is, this line item only informs her that

her debt *had accrued* interest since charge-off, not that her debt *will continue to accrue* interest

in the future, as required by *Avila*. Informing a consumer about the past accrual of interest does not alleviate *Avila*'s core concern: that a least sophisticated consumer may be misled into believing that a future payment of the amount stated will fully discharge her debt. 817 F.3d at 76. The inclusion of a line item listing past interest thus does not qualify as *Avila* safe harbor language because it does not clearly inform the consumer that the balance stated in the letter will increase over time.

Third, Defendant argues that because the information listed in Plaintiff's letter is technically accurate, it cannot be materially misleading. The Court disagrees. The Second Circuit has recognized that the least sophisticated consumer standard encompasses a materiality element. *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018). The "materiality inquiry focuses on whether the false statement would 'frustrate a consumer's ability to intelligently choose his or her response.'" *Cohen,* 897 F.3d at 86 (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)). In *Cohen*, the Court found that while the creditor listed in a foreclosure complaint was technically inaccurate, it was an immaterial misrepresentation because there was "no indication that the identification of Green Tree as the creditor misrepresented the nature or legal status of the debt or undermined [plaintiff's] ability to respond to the debt collection." 897 F.3d at 86.

In *Cohen* the de minimis misrepresentation did not influence the plaintiff's ability to respond to the debt collection. 897 F.3d at 86. Here, as in *Avila*, technically true information about the plaintiff's current balance is misleading because it did not clearly inform Plaintiff her that her balance may increase, impeding her ability to know how to act to pay off the debt. 817 F.3d at 76. *Cohen* does not overrule *Avila* and require information to be technically false in order to violate Section 1692e. Therefore, Defendant's contention that its letter does not contain any

technically false information does not make its failure to disclose that Plaintiff's debt was increasing immaterial.

As made clear by the Second Circuit in *Avila*, "the FDCPA requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees." 817 F.3d at 76. Here, the Defendant's statement of "balance due as of August 11, 2016," with a statement of the "total interest charged since charge off" failed to inform the least sophisticated consumer that her balance may increase. Nor did the letter state that Defendant would "accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date." *Avila*, 817 F.3d at 77. Plaintiff is therefore entitled to summary judgment on her claim under 1692e.

## IV.    MOTION FOR CLASS CERTIFICATION

Having ruled on Defendant's and Plaintiff's cross-motions for summary judgment, the Court now turns to the Plaintiff's motion for class certification. (Dkt. No. 49). Before turning to the analysis, the Court explains its decision to decide the summary judgment motions and the class certification motion in the same memorandum-decision and order.

A court's "decision on the merits . . . should not ordinarily occur before or simultaneous with a decision on class certification." *In re Cablevision Consumer Litig.*, No. 10-cv-4992, 2014 WL 1330546, at *15, 2014 U.S. Dist. LEXIS 44983, at *48 (E.D.N.Y. Mar. 31, 2014) (quoting *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 335 (S.D.N.Y. 2009)). This is because "there could be some unfair prejudice to the defendant if a class is certified . . . after a judgment on the merits has been entered in favor of the class." *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 48 (W.D.N.Y. 2009).

Nonetheless, there is "nothing in Rule 23 to preclude the Court from examining the merits of plaintiffs' claim on a proper . . . Rule 56 motion simply because such a motion is

returnable contemporaneously with a class action." *Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 87 n.1 (E.D.N.Y. 1989); *see also Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) ("The decision to award summary judgment before acting on class certification [is] well within the discretion of the district court."). Courts in the Second Circuit and elsewhere have recognized that "a defendant can waive any objection to a decision on the merits prior to, or simultaneous with, a decision on class certification." *Mendez*, 260 F.R.D. at 45 (citing *Ahne v. Allis–Chalmers Corp.*, 102 F.R.D. 147, 151 (E.D. Wis. 1984)). This waiver can be express or implied through the defendant's motion for summary before class certification. *Id.* (citations omitted).

In this case, Defendant has waived any objection to a decision on the merits occurring before a decision on class certification. First, Defendant moved for summary judgment before class certification had been decided. Second, in its opposition to class certification, Defendant requested "that the Court stay rendering a decision on the Class Certification Motion until the Court has rendered its decision on the pending Summary Judgment motions." (Dkt. No. 52, at 12). Consequently, "defendant[] [is] well aware that this action [has] been brought against [it] as a class action, and [it] must [know] that any determinations against [it] might well inure to the benefit of the class as a whole." *Mendez*, 260 F.R.D. at 48.

A.    **Standard**

For a matter to proceed as a class action, a plaintiff must satisfy four requirements: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a). In addition, the Second Circuit has

recognized an implicit requirement of ascertainability in Rule 23, which demands that a class be "defined using objective criteria that establish a membership with definite boundaries." *Univs. Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A.* (*In re Petrobras Sec.*), 862 F.3d 250, 260, 269 (2d Cir. 2017)).

Assuming the requirements of Rule 23(a) are met, a class action may only be maintained if the plaintiff also qualifies the proposed class under one of the categories in Rule 23(b). Fed. R. Civ. P. 23(b). Here, Plaintiff seek to certify the class for purposes of compensatory relief under Rule 23(b)(3). The court may certify a Rule 23(b)(3) class if it "finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of satisfying Rule 23's requirements by a preponderance of the evidence. *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 384 (S.D.N.Y. 2016). Thus, "a court must 'probe behind the pleadings before coming to rest on the certification question,' satisfying itself that Rule 23 compliance may be demonstrated through 'evidentiary proof.'" *Johnson v. Nextel Commun. Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). "A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offerings Sec. Litig.*), 471 F.3d 24, 42 (2d Cir. 2006).

### B.      Proposed Class

Plaintiff seeks class certification of her second and third claims but does not seek

certification for her first claim.[7] Her second claim, pertaining to the required "amount of debt"

under Section 1692g of the FDCPA, has been dismissed and so her motion for certification on

that claim is moot. Plaintiff seeks to certify the following class for her third claim:

> (1) All consumers to whom Weltman, Weinberg & Reis Co., LPA
> mailed letters seeking to collect debts which were subject to increase
> based on interest and/or late fees, but which failed to disclose that
> the amount of the debt was subject to increase, and (2) which were
> sent on or after a date one year prior to the filing of this action and
> on or before a date 21 days after the filing of this action.

(Dkt. No. 49-2, at 6).

### C.      Analysis

#### 1.      Ascertainability

"[T]he ascertainability doctrine that governs in this Circuit requires only that a class be

defined using objective criteria that establish a membership with definite boundaries." *Petrobras*,

862 F.3d at 264. "This modest threshold requirement will only preclude certification if a

proposed class definition is indeterminate in some fundamental way." *Id.* at 269. The Second

Circuit expressly "decline[d] to adopt a heightened ascertainability theory that requires a

showing of administrative feasibility at the class certification stage." *Id.* at 265.

Despite the modest test articulated by the Second Circuit in *Petrobras*, Defendant argues

the proposed class is not ascertainable because nothing in its records indicates whether the letters

it mailed involved consumer debt (which is within the scope of the FDCPA) or commercial debt

(which is not). (Dkt. No. 52, at 12). *See* 15 U.S.C. § 1692a(5) (defining consumer debt as the

---

[7] The *Gibbons* court certified a similar class against Defendant regarding Plaintiff's first claim. 2018 WL 5720749, at
*11, 2018 U.S. Dist. LEXIS 187146, at *31.

"obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes"). According to Defendant, the Court will have to engage in extensive and individualized fact finding to determine who, among the over 58,000 individuals who received debt-collection letters during the proposed class period, had consumer (versus non-consumer) debt. (*Id*. at 17).

However, "[a]scertainability does not directly concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition, an issue that is already accounted for in Rule 23." *Petrobras*, 862 F.3d at 269. Defendant has failed to apply the ascertainability standard in *Petrobras* to the facts of this case. Here, since the class is specified with objective criteria—consumers to whom WWR, within a certain specified time, sent debt collection letters for debts[8] which were subject to increase based on interest and/or late fees, but failed to disclose that the amount of the debt was subject to increase—and that definition is "sufficiently definite," such that a determination is "objectively possible," the ascertainability requirement is met. 862 F.3d at 269–70; *see, e.g.*, *Langan v. Johnson & Johnson Consumer Co., Inc.*, 897 F.3d 88, 91 n.2 (2d Cir. 2018) (rejecting the defendant's argument that a proposed class of persons who purchased baby products was not administratively feasible, and finding "no ascertainability problem with having the class members submit sworn affidavits describing the circumstances under which the purchases were made.").

Defendant's arguments regarding the difficulty in establishing class membership might thus best be couched as arguments concerning the superiority and predominance requirements in

---

[8] The class certified is limited to consumers with debts which were primarily for personal, family or household purposes.

Rule 23(b).[9] However, because this assertion pervades all aspects of its opposition, the Court considers it here.

The majority of courts, both in the Second Circuit and elsewhere, "have concluded that factual questions related to personal use do not prevent the certification of consumer protection class actions." *Yazzie v. Gurley Motor Co.*, No. 14-cv-555, 2015 WL 10818834, at *5, 2015 U.S. Dist. LEXIS 182068, at *13 (D.N.M. Oct. 30, 2015) (collecting cases); *see also Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 120 (E.D.N.Y. 2015); *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014) (collecting cases); *Butto v. Collecto Inc.*, 290 F.R.D. 372, 383 (E.D.N.Y. 2013).

There are at least two reasons courts have followed this majority approach. One reason is "the need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action. If that need alone precluded certification, there would be no class actions under the FDCPA." *Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D. Ill. 2001). Yet Congress explicitly provided for class action damages when it passed the FDCPA. 15 U.S.C. § 1692k. Additionally, "Courts have recognized that the class action mechanism is well-suited to address technical violations of these statutes because class actions are designed 'to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights'" *Yazzie*, 2015 WL 10818834, at *5, 2015 U.S. Dist. LEXIS 182068, at *15 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

---

[9] In *Petrobras*, the Second Circuit found that the ascertainability requirement of a sufficiently definite class defined by objective criteria helps ensure the class is administratively feasible (a superiority concern) and mini-trials are avoided (a predominance concern). 862 F.3d at 269. As such, "the ascertainability requirement merely gives name to a particularly vexing type of class defect that would cause a proposed class to founder on the shoals of predominance, superiority, or both." *Id.* The court noted that it was rejecting a heightened ascertainability requirement because, *inter alia*, ascertainability is an absolute standard and predominance and superiority are both comparative in nature. *Id.* at 268.

Denying class certification on this ground because of a failure at this stage to identify consumer versus non-consumer debt would contravene the purpose underlying the passage of the FDCPA.

A second reason courts typically certify similar classes is because they have "generally concluded that the process for determining whether class members entered into a transaction primarily for personal, family, or household use is straightforward." *Yazzie*, 2015 WL 10818834, at *5, 2015 U.S. Dist. LEXIS 182068, at *15–16. The determination of whether the debt at issue is consumer or non-consumer debt can be achieved in one of two ways: by inquiring into the defendant's records or asking the potential class members. *Id*.; *see also Kalkstein*, 304 F.R.D. at 120; *Butto,* 290 F.R.D. at 383.

In this case, Defendant argues that "[n]othing in [its] records can objectively reveal the purpose of the obligation or extension of credit for each individual (*i.e.* why did each person purchase what he or she purchased)." (Dkt. No. 52, at 12). In other words, Defendant claims, its records cannot parse consumer debt from non-consumer debt.[10]

Plaintiff argues that the affidavit of WWR attorney Ms. Bitterman undercuts Defendant's assertions that it cannot identify which individuals can be considered consumers for the purposes of the FDCPA. (Dkt. No. 57, at 5–7). Ms. Bitterman states:

> WWR obtains information from creditor clients about consumer accounts and data is loaded into WWR's computer system. WWR attorneys are involved in . . . drafting client contacts, checking their reputation, interacting with the client, and discussing the available data and documentation, the history of their portfolio and types [of] accounts . . .
>
> WWR attorneys obtain warranties as to the validity of the debts put forth for collection; sampling documentation and terms from collection accounts, including calculation of interest rates to the

---

[10] Notably, Defendant does not provide a sworn affidavit or testimony from a corporate representative attesting to its inability to identify consumers. Nor does it mention the *Gibbons* court's rejection of this very same contention. *See* 2018 WL 5720749, at *10–11. In *Gibbons* the court certified a similar class against WWR after determining that its records could be used to identify consumers. 2018 WL 5720749, at *11, 2018 U.S. Dist. LEXIS 187146, *30–31.

> extent applicable and distinguishing interest accounts and those that are not, and analyzing default provisions and assessing the entitlement to post charge-off fees and costs, reviewing statutes of limitations, and determining when arbitration is required; reviewing for responsible parties; debtor asset review; and the "balance due" sought to be collected.
>
> The data provided by WWR's clients is "scrubbed". Scrubbing is a process by which outside vendors use criteria established by WWR's lawyers to flag consumers who should not be sent collection letters.

(Dkt. No. 45-2, ¶¶ 16–18). Ms. Bitterman also states that the firm creates policies to "ensure the firm's compliance with the Fair Debt Collection Practices Act" and other "state law and regulations, including the New York State Department of Financial Services regulations codified in 23 NYCRR 1.2(b)." (*Id.*, ¶¶ 9–10). Notably, both statutes only apply to consumer debt. So, to comply, WWR would need to have an internal system for designating what accounts pertain to consumer debt. Indeed, the record suggests that WWR has a director of consumer collections and a consumer collections business unit. (Dkt. 45-2, at 27).

Plaintiff has convincingly argued that "Defendant's records are more than adequate to identify potential class members." (Dkt. No. 57, at 7). Defendant's argument seems to be that, even if it has designated an individual as a "consumer," this designation does not mean objectively that the individual is a consumer for the purposes of the FDCPA. According to Defendant, "[t]he only method to accurately determine whether an obligation is primarily for personal, family, or household purposes, and is subsequently a 'consumer debt' under the FDCPA, is to directly ask the person making the purchase." (Dkt. No. 52, at 12). Defendant asserts that using its records to identify potential class members, and then asking those members about the nature of their debt during the class notification process would require "extensive and individualized fact-finding or mini-trials." (Dkt. No. 52, at 17) (citation omitted).

Despite Defendant's contention, numerous federal courts throughout the country have certified similar classes using similar means. *See Grubb v. Green Tree Servicing, LLC*, No. 13-cv-07421, 2017 WL 3191521, at *18, 2017 U.S. Dist. LEXIS 117465, at *52 (D.N.J. July 27, 2017)*; Luther v. Convergent Outsourcing, Inc.*, No. 15-cv-10902, 2016 WL 1698396, at *4, 2016 U.S. Dist. LEXIS 56456, at *10–11 (E.D. Mich. Apr. 28, 2016); *Kalkstein*, 304 F.R.D. at 120; *Gold*, 306 F.R.D. at 630; *Butto*, 290 F.R.D. at 383; *Selburg v. Virtuoso Sourcing Grp*., LLC, No. 1:11-cv-1458, 2012 WL 4514152, at *3, 2012 U.S. Dist. LEXIS 142653, at *8–10 (S.D. Ind. Sept. 29, 2012); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000).

*Butto* is instructive. 290 F.R.D. at 381–83. In a similar FDCPA action, the court found evidence to suggest that the defendant's records would be useful in determining which of the individuals mailed letters were protected by the FDCPA. However, the court found that even if the defendant's records could not differentiate between consumer and non-consumer debt, "this fact alone does not preclude class treatment . . . class members may be asked a single question to determine whether they are entitled to relief . . . The Court does not find it particularly arduous to ask potential class members the simple question of whether the individual's debt at issue qualifies as a consumer debt." 290 F.R.D. at 383 (citations omitted); *see also Kalkstein*, 304 F.R.D. at 120. In *Gold*, another FDCPA class certification decision, the court found that the proposed class was ascertainable because the defendant's records could serve as a starting place for the purposes of identification, and then "[f]urther identification of class members may be carried out through use of a court-approved notice and claim form." 306 F.R.D. at 630. So too, here. As Plaintiff points out, there is evidence in the record that suggests that Defendant's records can identify, at least as a preliminary matter, who is a consumer. The individuals so

identified can be asked a simple about whether their debt at issue qualifies as consumer debt in conjunction with class notification.[11]

The Court thus finds that the "modest threshold requirement" of ascertainability has been fulfilled. *Petrobras*, 862 F.3d at 264. And whether Defendant's argument regarding the difficulty of proving class membership is considered as part of the ascertainability analysis or as part of numerosity, commonality, typicality, or superiority, under the circumstances of this case the Court finds that individualized inquiries into each class member's debt does not preclude class certification. If Defendant discovers, after the class is certified, that the "class identification is unworkable or unreliable, [it] may move to decertify the class." *Gold*, 306 F.R.D. at 634.[12]

### 2. Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." In general, numerosity is presumed where a putative class has 40 or more members. *Shahriar*, 659 F.3d at 252. "[I]n assessing numerosity a court may make 'common sense assumptions' without the need for 'precise quantification of the class.'" *Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291, 295 (D. Conn. 2001) (quoting *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000)).

---

[11] Defendant's argument that the class is not ascertainable relies on two out-of-circuit cases. *Karhu v. Vital Pharmaceuticals, Inc.*, 621 F. App'x 945, 947–50 (11th Cir. 2015); *Riffle v. Convergent Outsourcing*, 311 F.R.D. 677, 680–81 (M.D. Fla. 2015). This reliance on *Karhu* and *Riffle* is misplaced because those cases express a minority view and are factually distinguishable from this case. There, the plaintiffs had failed to offer persuasive evidence that the defendant's records would be "useful in identifying potential class members." *Riffle*, 311 F.R.D. at 681; *see also Karhu*, 621 F. App'x at 949. Here, Plaintiff has offered compelling evidence, in the form of Ms. Bitterman's affidavit, that its records distinguish individuals who are consumers (and thus are potential class members).

[12] Defendant also asserts, without citation to authority, that its due process rights would be violated unless the parties "individually depose each and every single individual who received the letter at issue." (Dkt. 52, at 29). Given the numerous other federal courts across the country that have certified similar classes, this barebones argument does not suffice to defeat certification here. While the Court acknowledges that Defendant is "entitled to assurance through reasonable proof that only qualified individuals with debt related to personal, family, or household purposes are confirmed as class members," Defendant's "due process concerns can be addressed more fulsomely after class certification, when the Court may evaluate [its] overall conduct and total exposure." *Gold*, 306 F.R.D. at 630.

Plaintiff asserts that "numerosity is established" because "as alleged in the Complaint and as disclosed during discovery for the mediation, Defendant does not dispute that the number of putative class members is well over forty, and more likely is in the thousands of potential members." (Dkt. No. 49-2, at 9). Defendant contends, however, that of the over 58,000 "individuals" sent letters during the subject time period, there is no evidence that they are consumers falling within the protection of the FDCPA. (Dkt. No. 52, at 11). Defendant further notes that Plaintiff failed to conduct any discovery on class size. (*Id.*).

If over 58,000 individuals were sent letters during the subject time period, the requirement for numerosity would be fulfilled even if less than 0.1% of individuals contacted were consumers. *See Butto*, 290 F.R.D. at 392 (finding numerosity in a FDCPA case, noting that "common-sense suggests that at least some percentage of the 18,949 letters were sent to Verizon Wireless customers, and that potential class members likely number in the thousands"). And since the Plaintiff's current creditor, National Collegiate Student Loan Trust 2007-2, is one of WWR's creditor clients, (Dkt. No. 45-4, at 2), and WWR created policies "to ensure the firm's compliance" with the FDCPA, (*id.*), it is reasonable to believe that there are sufficient individuals similarly situated to Plaintiff to satisfy the numerosity requirement. Accordingly, the Court concludes that the Plaintiff has satisfied this requirement.

### 3.    Commonality

A plaintiff seeking class certification must show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question of law or fact is common to the class if the question is "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The common questions must generate "common *answers* apt to drive the resolution of the litigation." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir.

2016) (quoting *Dukes*, 564 U.S. at 350). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson*, 780 F.3d at 137 (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). When claims are based on uniform misrepresentations to all members of a class, they are often appropriate for class action "because 'uniform misrepresentations' can be adjudicated with 'no need for a series of mini-trials.'" *Zirogiannis v. Nat'l Recovery Agency, Inc.*, No. 14-cv-3954, 2016 WL 7410663, at *4, 2016 U.S. Dist. LEXIS 177589, at *10 (E.D.N.Y. Dec. 22, 2016) (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013)).

Plaintiff argues that commonality is satisfied here because "the claims of putative class members turn on the common contention that Defendant's collection letter violates the FDCPA." (Dkt. No. 49-2, at 11–12). In other words, "the Plaintiff has established commonality because the resolution of this action will rest on whether or not the Defendant's alleged conduct in sending the form letters violated numerous provisions of the FDCPA." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 336 (E.D.N.Y. 2013).

Defendant, on the other hand, contends that because individual inquiries are necessary to figure out whether the debt at issue is consumer debt, the commonality requirement is not fulfilled. (Dkt. No. 52, at 17). As described above, Defendant's arguments are unpersuasive. Once the class of consumers is identified, "it is clear that the legality of Defendants' use of the challenged standardized forms to communicate with personal, family, or household consumers can be resolved in one stroke." *Yazzie*, 2015 WL 10818834, at *3, 2015 U.S. Dist. LEXIS 182068, at *10. Accordingly, Plaintiff has established commonality.

###### 4.      Typicality

Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). But typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

Plaintiff asserts that there is typicality because "[t]he class members have all been subject to the same treatment as Plaintiff, *to wit*, Defendant sent them all the same deceptive letter." (Dkt. No. 49-2, at 11). Therefore, Plaintiff's claim is typical of the class because it arises from the same course of events and hinges on the same legal arguments. *See Annunziato*, 293 F.R.D. at 337 ("[I]n litigating this case, the Plaintiff and class members will set forth the same claims based on the alleged FDCPA violations in the form letters. As such, the Court finds that the typicality requirement is met."). Defendant's argument concerning non-consumer debt overlooks the fact that only consumers will be class members and thus Plaintiff has satisfied the typicality requirement.

### 5.    Adequacy of Representation

"Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's

interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys

are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin &*

*Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Regarding named plaintiffs' adequacy, the

requirement is twofold: the named plaintiffs must be "prepared to prosecute fully the action and

have no known conflicts with any class member." *Shahriar*, 659 F.3d at 253; *accord Denney v.*

*Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (stating that "the proposed class

representative must have an interest in vigorously pursuing the claims of the class, and must have

no interests antagonistic to the interests of other class members"). Accordingly, "the named

plaintiffs must 'possess the same interest[s] and suffer the same injur[ies] as the class

members.'" *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir.

2011) (alterations in original) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26

(1997)).

Here, Plaintiff asserts she is an adequate class representative because there is no evidence

of any conflict and she is "ready, willing, and able to discharge her responsibilities as a class

representative." (Dkt. No. 49-2, at 12). Magistrate Judge Daniel J. Stewart appointed Plaintiff's

counsel, Barshay Sanders, PLLC, as Interim Class Counsel on May 18, 2018. (Dkt. No. 37).

Defendant does not offer any objection to the adequacy of Plaintiff or her attorneys.

Accordingly, the adequacy requirement has been fulfilled.

### 6.    Predominance

For certification under Rule 23(b)(3), Plaintiffs must establish that "questions of law or

fact common to class members predominate over any questions affecting only individual

members." Fed. R. Civ. P. 23(b)(3).

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Mazzei*, 829 F.3d at 272. It is satisfied when (1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof. *Petrobras*, 862 F.3d at 270. "The distinction between 'individual' and 'common' questions is thus central to the predominance analysis." *Id.* An "individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (alteration in original) (internal quotation marks omitted).

Plaintiff argues that common issues predominate because "the claims of putative class members turn on the common contention that Defendant's collection letter violates the FDCPA and . . . similar arguments will be made to prove Defendant's liability." (Dkt. No. 49-2, at 12–13). Plaintiff further argues that because Defendant's liability will be determined under the "least sophisticated consumer" standard, which is objective, individual class members will not need to prove their subjective understanding of the letter. (*Id*. at 13).

The Court has now determined liability, and Defendant has not identified any individualized issues beyond its concern about identifying class members. However, as the court in *Gold* aptly noted, "[t]he liability issue . . . represents a significant aspect of the case that is not diminished by the potential difficulties in identifying class members." 306 F.R.D. at 634.

Defendant also argues that common issues do not predominate because choice of law issues may call "for the application of different laws to various class members." (Dkt. No. 52, at

26). This contention lacks merit in this case. Courts have recognized that "variations in *state law* may swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) (emphasis added). However, the FDCPA is a federal law and "there is ultimately a single proper interpretation of federal law." *In re Korean Air Lines Disaster of Sept. 1*, 1983, 829 F.2d 1171, 1175 (D.C. Cir. 1987). Therefore, regardless of whether other Circuits have interpreted the FDCPA to require the kind of safe harbor language dictated by *Avila*, "each [federal court] has an obligation to engage independently in reasoned analysis." *In re Korean Air Lines Disaster,* 829 F.2d at 1171. As such, in this case, there is no variation in law that would defeat predominance.

Therefore, the Court finds that the predominance requirement has been met.

### 7.    Superiority

In order to certify a class under Rule 23(b)(3), the Court must determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In doing so, the Court considers factors including: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against members of the class"; (3) "the desirability or undesirability of concentrating the litigation in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

Plaintiff contends that a class action is superior in this case because individual recovery is small and litigating independently could lead to repetitious litigation and inconsistent adjudications. (Dkt. No. 49-2, at 13). The Court agrees. First, "[c]lass litigation is a superior vehicle for the instant case given economies of scale. FDCPA cases are unlikely to be brought on an individual basis due to the statute's low cap on individual damages, especially when

compared to potential litigation costs." *Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 356 (E.D.N.Y. 2013). Given this cap on damages, "class members clearly have an interest in avoiding separate litigation of the claims and little to no interest in individually controlling their prosecution." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006). Second, litigating as a class also promotes a "unity of analysis and outcome, compared to potentially conflicting outcomes across a multitude of individual suits." *Vu*, 293 F.R.D. at 356.

Defendant's arguments to the contrary are unavailing. Defendant argues that because each putative class member will need to be deposed individually in order to avoid infringing on Defendant's due process rights, proceeding as a class action is not superior. (Dkt. No. 52, at 29). As discussed with respect to ascertainability, *see supra* Section IV.C.1., individual depositions are likely unnecessary given Defendant's records can identify consumers. *See Gibbons*, 2018 WL 5720749, at *10, 2018 U.S. Dist. LEXIS 187146, at *26 (rejecting this same argument because "the class remains limited to individuals who received letters regarding only consumer obligations").

Defendant further argues that class members would receive significantly less as part of a class than if they pursued their claims individually. (Dkt. No. 52, at 29–30). However, to allow Defendant to escape class certification based on the vastness of their allegedly improper conduct would thwart the purpose of class actions and the "class action form is the only way to ensure defendants' compliance with the FDCPA . . . Each class member has a stake in vindicating his rights, and the public has an interest in seeing that the FDCPA is obeyed." *Weber v. Goodman*, 9 F. Supp. 2d 163, 171 (E.D.N.Y. 1998) (holding a FDCPA class action superior with 420,000 members with a maximum recovery of $2.00 each); *see also Kalkstein*, 304 F.R.D. at 124 ("[T]his court has certified a class action notwithstanding the possibility of higher individual

recoveries because of the transaction costs involved in bringing an FDCPA action on an individual basis." (citing *Kalish v. Karp & Kalamotousakis*, LLP, 246 F.R.D. 461, 464 (S.D.N.Y. 2007))). Additionally, if potential class members would like to pursue their claims individually in the hopes of a greater recovery, "Rule 23(c) allows Rule 23(b)(3) class members to opt out of the class and bring their own claims." *Gibbons*, 2018 WL 5720749, at *9, 2018 U.S. Dist. LEXIS 187146, at *24.

Accordingly, the Court concludes that Plaintiff has adequately shown superiority.

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. No. 45) is **GRANTED** as to Plaintiff's 15 U.S.C. § 1692g(a)(1) "amount of debt" claim but is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiff's 15 U.S.C. § 1692g(a)(1) "amount of debt" claim is **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 48) is **GRANTED** as to her 15 U.S.C. § 1692e "debt increase" claim but is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiff's Motion for Class Certification (Dkt. No. 49) is **GRANTED;** as to her claim that the failure to disclose that the consumer's balance was subject to future interest and/or late fees violated 15 U.S.C. § 1692e for the following Rule 23(b)(3) class:

> All consumers to whom Weltman, Weinberg & Reis Co., LPA (WWR) mailed letters seeking to collect debts: (i) which were primarily for personal, family, or household purposes; and (ii) which debts were subject to increase based on interest and/or late fees; and (iii) to whom WWR sent letters failing to disclose that the amount of the debt was subject to increase; (iv) during the period from on or

after a date one year prior to the filing of this action and on or before
a date 21 days after the filing of this action;

and it is further

**ORDERED** that Plaintiff's Motion for Class Certification (Dkt. No. 49) is otherwise

**DENIED;** and it is further

**ORDERED** that Plaintiff is appointed as class representative; and it is further

**ORDERED** that Interim Class Counsel Barshay Sanders, PLLC, is appointed as class

counsel; and it is further

**ORDERED** that the parties are directed to meet and confer regarding a proposed class

notice and submit a proposed notice to the Court by October 7, 2019.

**IT IS SO ORDERED.**

Dated:  September 23, 2019
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge