**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CHRISTY BITZKO, individually and on behalf of all
others similarly situated,

                                                                  1:17-cv-00458 (BKS/DJS)

                              Plaintiffs,

v.

WELTMAN, WEINBERG & REIS CO., LPA,

                              Defendants.

---

**Appearances:**

*For Plaintiff and Class:*
Craig B. Sanders
Barshay Sanders, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530

*For Defendant:*
Glenn M. Fjermedal
Davidson Fink, LLP
28 East Main Street, Suite 1700
Rochester, New York 14614

**Hon. Brenda K. Sannes, United States District Judge:**

**FINAL SETTLEMENT APPROVAL ORDER**

**I.   INTRODUCTION**

Following summary judgment, two claims remained in this case: (1) Plaintiff Christy Bitzko's individual claim that Defendant, Weltman, Weinberg & Reis Co., LPA. ("WWR" or "Defendant"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e by sending her a debt collection letter on law firm letterhead even though WWR attorneys were not meaningfully involved in its creation; and (2) the Class Action claim that Defendant failed to provide a complete notice of the "amount of debt" owed, in violation of 15 U.S.C. § 1692g.

Plaintiff has notified the Court that she has settled her individual claim under § 1692e. (Dkt. No. 100). Further, on April 16, 2021, the Court preliminarily approved settlement of the "amount of debt" Class Action claim and ordered notice to class members. (Dkt. No. 101). Presently before the Court are the Parties' (1) motion for final approval of the Class Settlement Agreement and Release (the "Settlement") between plaintiff Christy Bitzko ("Plaintiff"), individually and as representative of the class ("Settlement Class"),[1] and Defendant, Weltman, Weinberg & Reis Co., LPA. ("WWR" or "Defendant"), (Dkt. No. 107); and (2) motion for attorney fees, (Dkt. No. 108). The Court held a telephonic fairness hearing on August 10, 2021. For the following reasons, the Parties' motions are granted.

## II. BACKGROUND

The Court previously recounted, at length, the nature of the claims alleged in the Amended Complaint, (Dkt. No. 13), as well as the relevant facts in ruling on the parties' motions for summary judgment, class certification, modification of the Class definition; and preliminary approval of the Class Settlement, (Dkt. Nos. 59, 87, 101). *See also Bitzko v. Weltman, Weinberg & Reis Co., LPA ("Bitzko I")*, No. 17-cv-00458, 2019 WL 4602329, 2019 U.S. Dist. LEXIS 161495 (N.D.N.Y. Sept. 23, 2019) (granting in part and denying in part cross-motions for summary judgment and granting motion for class certification); *Bitzko v. Weltman, Weinberg & Reis Co., LPA ("Bitzko II")*, No. 17-cv-00458, 2020 WL 8620130, 2020 U.S. Dist. LEXIS

---

[1] The Class is defined as:

> All consumers who to whom Weltman, Weinberg & Reis Co., LPA mailed letters to addresses within the jurisdiction of the Second Circuit Court of Appeals seeking to collect debts: (i) which were primarily for personal, family, or household purposes; and (ii) which debts were subject to increase based on interest and/or late fees; and (iii) to whom WWR sent letters failing to disclose that the amount of the debt was subject to increase; (iv) during the period from on or after a date one year prior to the filing of this action and on or before a date 21 days after the filing of this action.

*Bitzko II*, 2020 WL 8620130, at *3, 2020 U.S. Dist. LEXIS 205926, at *6–7.

205926 (N.D.N.Y. Nov. 4, 2020) (granting joint motion for modification of the Class definition). The Court assumes general familiarity with the background of this case. Having reviewed the parties' submissions, (Dkt. Nos. 107, 108, 110), including the proposed Settlement, (Dkt. No. 97-1, at 1–15), the objection to Settlement by Mark Reynolds and Kathen Cowan, (Dkt. No. 104), and having considered the parties' positions, as articulated during the telephonic hearings concerning the motions for settlement approval, the Court makes the following findings and approves the Agreement upon the terms and conditions set forth in this Order.

### III.  STANDARD OF REVIEW

Because this case is a class action, this Court must approve the Settlement. The procedure for approval includes three distinct steps: (a) preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval, including preliminary approval of any agreed settlement classes; (b) dissemination of mailed and/or published notice of settlement to all affected class members; and (c) a final settlement approval hearing or fairness hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *See* Fed. R. Civ. P. 23(e); *see also* 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS, §§ 13:1 *et seq.* (5th ed. 2014).

Under Rule 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable and adequate." *Elliot v. Leatherstocking Corp.*, No. 10-cv-0934, 2012 WL 6024572, at * 4, 2012 U.S. Dist. LEXIS 171443, at *7 (N.D.N.Y. Dec. 4, 2012). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Courts examine procedural and substantive

fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005).

## IV.  DISCUSSION

### A.  Settlement Class

Plaintiffs previously sought and received class certification under Rule 23. This Court determined that the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); NEWBERG § 11:27 (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)). The Court further appointed Plaintiff's counsel as Class Counsel and the named Plaintiff as Class Representative. As of the date of this Order, no facts have been presented to indicate that the preliminary determination was incorrect or erroneous. Thus, for the reasons set forth in the Court's prior certification orders, the Court hereby grants final certification of the Settlement Class.

### B.  Procedural Fairness

Fairness is evaluated by "the negotiating process leading up to the settlement as well as the settlement's terms." *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 54 (E.D.N.Y. 2010). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness). If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their]

4

judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 WL 2230177, at *4, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

This case's history demonstrates that the parties reached this Settlement only after engaging in thorough investigation and discovery, permitting each side to assess the potential risks of continued litigation, and lengthy settlement discussions. Further, the Settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery. Accordingly, the Court concludes a finding or procedural fairness is warranted.

    **C.**    **Substantive Fairness**

        **1.**    ***Grinnell* Factors**

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recover; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.*

As a result of amendments to Rule 23 implemented in December 2018, the *Grinnell* factors are now, in material part, expressly set forth in Rule 23(e)(2), which requires courts to analyze four factors: (A) the adequacy of representation by class representatives and class counsel; (B) whether settlement negotiations were done fairly at arm's length; (C) the

adequacy of relief provided under the settlement (including the terms of any proposed award of attorneys' fees); and (D) the equity of treatment of Class Members relative to one another.

Courts in the Second Circuit continue, however, to consider and analyze the *Grinnell* factors as well. *See Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 24 (E.D.N.Y. June 3, 2019) (describing *Grinnell* as "the Second Circuit's seminal case for assessing the fairness of class action settlements"); *id.* at 30 (observing that it is unclear whether Rule 23(e)(2)(A)-(D)'s factors replace or supplement the *Grinnell* factors); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("The Court understands the new Rule 23(e) factors to add to, rather than displace, the *Grinnell* factors.… Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C–D) factors, as they both guide a court's substantive, as opposed to procedural, analysis.").

Here, all of the *Grinnell* and Rule 23(e)(2) factors weigh in favor of granting final approval of the Settlement Agreement.

First, litigation through trial would delay the resolution of this case. At the fairness hearing, the Parties agreed that liability having been established, the only issue remaining for trial would be Defendant's valuation. The FDCPA provides that the amount of damages, "in the case of a class action" is "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a). According to the parties, absent settlement, further discovery would be necessary to update Defendant's financial disclosure and the Class would need to hire an expert to take a position on the meaning of the financial disclosure. Accordingly, the Settlement enables the parties to avoid the expense and delay of additional discovery, hiring a financial expert, and trial. The settlement of the pending claims instead ensures certainty of outcome and substantial recovery for the class. "Most class actions are inherently complex and

settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Moreover, post-trial, any judgment would potentially be appealed, which would extend the duration of the litigation through the completion of all appeals. By contrast, the settlement of the litigation makes monetary relief promptly available to Class Members. Therefore, the first *Grinnell* factor (mirrored in Rule 23(e)(2)) weighs in favor of final approval.

Second, the response to the settlement has been positive. The Claims Administrator mailed the class notice to 4,353 potential class members. (Dkt. No. 110-1, ¶ 8). The Claims Administrator has received a total of 387 claims, 1 objection, and 1 request for exclusion. (Dkt. No. 104; Dkt. No. 110-1, ¶¶ 12–14; Dkt. No. 110-2). No Class Member appeared at the fairness hearing. That constitutes a solid and positive response. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and three opted out); *see also Willix v. Healthfirst Inc.,* No. 07-cv-1143, 2011 WL 754862, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven out of 2,025 class member submitted timely objections and two requested exclusion).

Moreover, the Court has reviewed and considered the objection submitted by Mark Reynolds and Kathen Cowan, (Dkt. No. 104), and finds it without merit. Reynolds and Cowan argue that the $80,000 settlement is "by far too little," based on WWR's alleged doubling of the amount owed and M&T Bank's alleged mishandling of a home equity line of credit. (Dkt. No. 104, at 1–2). WWR has submitted a declaration in response by Eileen Bitterman, WWR's

7

Compliance Officer. (Dkt. No. 107-4). Bitterman avers that she "inputted . . . Kathen Cowan's name[] into WWR's collections system" but that Cowan "was not identified at all on WWR's collection system. (Dkt. No. 107-4, ¶ 4). Bitterman states that Reynolds is a class member as he has a student loan debt being collected by WWR, but that Bitternman has identified no other "delinquent accounts being collected by WWR," and that even if it handled Reynolds' home equity debt, it has "no relationship to the class defined in this matter." (*Id.* ¶ 5).

"Nonparties to a settlement generally do not have standing to object to a settlement of a class action." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007) (quoting 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 13:69 (4th ed. 2002)). In addition, "[t]he objector, as a party seeking to generate a court ruling, has the burden of demonstrating her standing." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 499 (S.D.N.Y. 2018) (quoting 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:22 (5th ed.) (Westlaw 2018)). According to Bitterman, Cowan is not a class member. (Dkt. No. 107-4, ¶ 4). Cowan, therefore, lacks standing to object.

Further, while Reynolds is a Class Member, his claim stems from Defendant's efforts to collect his student loan debt—not his M&T Bank home equity line of credit debt. Reynolds' claims concerning the home equity line of credit concern a separate and distinct debt and implicate an individual legal issue with no connection to the Class Action claim in this case. The Court therefore rejects and denies Reynolds' objection. Finally, as discussed below, the Court finds the settlement amount fair in this case, so his objection to the settlement amount is baseless.

Thus, the second *Grinnell* factor weighs strongly in favor of approval.

Third, discovery has progressed sufficiently to permit the parties to recommend settlement; as discussed, the only discovery remaining concerns an updated financial disclosure by Defendant. There is no particular threshold that discovery must reach in order to demonstrate that discovery has advanced far enough to allow the parties to resolve the case responsibly. The analysis turns upon "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The Parties' discovery here easily meets this standard. The Parties "gathered significant information concerning the parties, the claims, the class and the Defendant's net worth during discovery." (*Id.*). Thus, while an update concerning Defendant's net worth might be necessary for trial, given the Parties' representation that sufficient information has been exchanged about Defendant's net worth to evaluate the amount of damages, the Court concludes the third *Grinnell* factor weighs in favor of settlement.

Fourth, in weighing the risks of establishing liability, class treatment, and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted). Here, the parties agree that liability has been established and the only issue remaining for trial is Defendant's valuation. However, as the Parties recognize, "while the allegations against Defendant are serious, they are not ranked as the most egregious violations of the FDCPA," and "going to trial could result in a recovery to the class that is less

9

than this settlement provides." (Dkt. No. 107-1, at 17 (citing *Diaz v. FCI Lender Servs., Inc.*, No. 17-cv-8686, 2020 WL 4570460, at *5, 2020 U.S. Dist. LEXIS 141314, at *13 (S.D.N.Y. Aug. 7, 2020) ("[C]ourts are not always as generous to FDCPA plaintiffs.")). Accordingly, the fourth *Grinnell* factor weighs in favor of approval.

The Parties have not provided any information with respect to the Fifth or Sixth *Grinnell* factors, except to assert that "[b]oth parties recognized that there were risks and costs associated with further litigation." (*See* Dkt. No. 107-1, at 17, Dkt. No. 96-1, at 14),

Seventh, the amount of the Settlement, $80,000, weighs strongly in favor of final approval. Each of the 387 Class Members is to receive a check for $206.72. (Dkt. No. 110-1, at 2; Dkt. No. 110-3, ¶ 5). "Recovery in FDCPA class actions [is] limited to $1,000 statutory damages for each named plaintiff, and the lesser of $500,000 or one percent of the net worth of the defendant debt collector for the remainder of the class." *Passafiume v. NRA Grp., LLC*, 274 F.R.D. 424, 428 (E.D.N.Y. 2010) (citing 15 U.S.C. § 1692k(a)(1), (a)(2)(B)). "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178). Instead, "'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

The eighth and ninth *Grinnell* factors favor final approval. As previously noted, there are some risks associated with proceeding to trial in this case. Further, proceeding to trial would delay the resolution of this action, increase Class expenses as well as attorneys' fees,

and carry uncertainty as to the amount of damages. Those risks must be weighed against Defendants' offer to resolve the case for $80,000 enabling a payment to each eligible Class Member. And, having presided over this case from the outset and having reviewed the Parties' representations as to damages, the Court concludes that the settlement represents a significant percentage of the recovery that the Class would have achieved had they prevailed on their claims, survived an appeal, and sought to enforce and collect upon a judgment. *See, e.g., Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)).

Accordingly, the Settlement falls within the range of reasonableness.

### 2. Rule 23(e)(2) Requirements

The Court concludes that the Rule 23(e)(2) requirements also favor approval. First the Class Representative and the Class have, at all times, been adequately represented. Class Counsel is experienced in class action and FDCPA litigation. Class Counsel has pursued discovery, litigated dispositive motions, and obtained class certification. Second, the settlement negotiations were done fairly at arm's length. Finally, as discussed, the settlement amount and proposed distribution of funds provides equitable relief to each class member.

Thus, for the aforementioned reasons analyzing the *Grinnell* factors, the Settlement results in the Class Members receiving adequate relief. Under Rule 23(e)(2)(C)(i)–(ii) (costs, risks, and delay of trial and appeal and effectiveness of distribution of relief), the Settlement avoids risks that would inevitably occur if this lawsuit proceeded to trial, or appeal and the mechanisms set forth above and detailed in the Settlement Agreement ensure smooth, efficient,

and effective class notice and payment procedures, overseen and supervised by First Class, Inc., a class action administrative service. (Dkt. No. 110-1, ¶ 3).

Rule 23(e)(C)(iii) requires this Court to consider the timing of payment of attorneys' fees. With respect to the payment, the Settlement Agreement provides that Defendants will not oppose an application by Plaintiff's Counsel to seek $60,000 in attorneys' fees and costs "separate of the [$80,000] Class Recovery." (Dkt. No. 97-1, at 6). The attorneys' fees and costs will be paid "[w]ithin thirty (30) days after the effective date."[2] (Dkt. No. 97-1, at 7). As discussed *infra,* Plaintiffs have demonstrated that their requested fee award satisfies the standards in this Circuit, including the factors enunciated in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Under Rule 23(e)(2)(C)(iv), this Court must consider "any agreement required to be identified under Rule 23(e)(3)." Generally, this provision has been read to reference the settlement agreement itself, including attorney's fees awarded pursuant to the settlement. *Berni*, 332 F.R.D. at 42 (citing 5 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 15:12 (5th ed. 2018)). As explained above, the Settlement Agreement and its terms provide adequate relief to the Class.

---

[2] The Settlement states, in relevant part, that it:

> Shall become effective (hereinafter the 'Effective Date') upon the occurrence of the following events: (1) the Court enters a final approval order which: (a) approves this Agreement as fair, reasonable, and adequate to the Class; (b) finds that this Agreement is fair and made in good faith; (c) enters a final approval order and judgment; and (d) no objections were received; or (2) if objections were received then: (a) if the final approval order and judgment is not appealed, the expiration of five (5) days from the date that the final approval order becomes a final, non-appealable order; or (b) if the final approval order and judgment is appealed, the expiration of five (5) days after the final disposition of any such appeal, which final disposition affirms the Court's final approval order and judgment and orders the consummation of the settlement in accordance with the terms and provisions of this Agreement.

(Dkt. No. 97-1, at 4).

In accordance with Rule 23(e)(2)(D), the Settlement Agreement treats Class Members equitably relative to one another: each Class Member will receive an equal share of the $80,000 Settlement fund. *See also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.").

Accordingly, the Court finds that all of the Rule 23(e)(2) factors and *Grinnell* factors have been satisfied.

### D. Award of Fees and Costs to Class Counsel and Service Awards to Class Representatives

Class Counsel seek $60,000 for attorney fees and costs, separate from the Class Recovery of $80,000 and a $1,000 service award to Plaintiff. (Dkt. No. 108-1, at 4; Dkt. No. 107-1, at 10).

#### 1. Attorneys' Fees

Under § 1692k(a)(3), the FDCPA allows a successful plaintiff "the costs of the action, together with a reasonable attorney's fee as determined by the court." "In approving the settlement of a class action, the court has the responsibility to insure that the terms of the settlement are fair and reasonable, including the amount of fees and costs obtained by class counsel." *Torres v. Toback, Bernstein & Reiss LLP*, No. 11-cv-1368, 2017 WL 281878, at *2 (E.D.N.Y. Jan. 23, 2017) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 621 (1997); Fed. R. Civ. P. 23(e)). As an initial matter, the Court notes that the Parties negotiated the amount of attorneys' fees to be paid by Defendant separately from the Class Recovery, thus any award of attorneys' fees will not affect the Class Recovery. *See, e.g., Babcock v. C. Tech Collections, Inc.*, No. 1:14-cv-3124, 2017 WL 1155767, at *10 (E.D.N.Y. Mar. 27, 2017) (finding, in evaluation attorneys' fees award in FDCPA class action that "[s]ince the amount of

the attorneys' fee," which was negotiated after the class settlement, "will not affect the class recovery, this weighs in favor of finding the fee reasonable").

"Fees may be awarded under either the lodestar or percentage of the funds method." *Id.* (citing *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Regardless of which method is used, courts should consider the following factors when reviewing a request for attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

First, the time and effort expended by Class Counsel in prosecuting the litigation and achieving the Settlement support the fee request: Class Counsel did substantial work identifying, investigating, prosecuting, and settling the Class Members' claims. Class Counsel have provided contemporaneous billing records evidencing counsel's work on this action. (Dkt. No. 108-2, at 5–29). Class Counsel collectively billed a total of 256.9 hours of attorney and paralegal time[3] litigating this action, and $1,345 in costs.[4] (Dkt. No. 108-2, at 29). In response to the Court's inquiry regarding the time billed to Plaintiff's separate, individual claim, Class Counsel reduced their time to 212.5 hours ($70,582.50), as their initial fee

---

[3] Barshay Sanders, PLLC

| Name | Role/Years Experience | Hours Billed | Hourly Rate | Proposed Fee |
|---|---|---|---|---|
| Craig Sanders | Partner/28 Years | 83.2 | $350.00 | $29,120 |
| David Barshay | Partner/21 Years | 126 | $350.00 | $44,100 |
| Johnathan Cader | Sr. Associate/14 Years | 45.9 | $250.00 | $11,475.00 |
| Angeliza Franco | Paralegal | 1.6 | $100.00 | $160.00 |
| Martha Montoya | Paralegal | .2 | $100.00 | $20.00 |
| Total | | 256.9 | | $86,099 |

[4] Class Counsel represents that they billed fewer hours than hours worked. (*See* Dkt. No. 108-2, at 29 (Total Hours: 282, Hours Billed: 256.9)). In addition, the fees sought are inclusive of the $1,345 in costs reported by Class Counsel.

application reflected the hours spent litigating Plaintiff's separate, independent claims as well as the Class claims. (Dkt. No. 110). Even so reduced, the award requested, $60,000, is less than the amount billed, $70,582.50. Further, their legal work will not end with approval of the proposed Settlement. (Dkt. No. 108-1, at 15–16). Additional time and resources will necessarily be expended responding to Class Members' inquiries, concluding the claims process, and filing a distribution motion. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10, 2015 U.S. Dist. LEXIS 152668, at *27 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Second, the risks of litigation support the requested fee. "[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54. In applying this factor, courts have repeatedly recognized that "class actions confront even more substantial risks than other forms of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5, 2010 U.S. Dist. LEXIS 63342, at *14 (E.D.N.Y. June 24, 2010).

Third, overall, the quality of Class Counsel's representation supports the fee request. Class Counsel has substantial experience prosecuting and settling class actions, including FDCPA actions. (Dkt. No. 108-2, at 1–4). The quality of Class Counsel's representation is best evidenced by the quality of the result achieved. *See In re Veeco Instruments Secs. Litig.*, No. 05 MDL 01695, 2007 WL 4115808, at *7, 2007 U.S. Dist. LEXIS 85554, at *23 (S.D.N.Y. Nov. 7,

2007); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). The Settlement has provided a favorable result for the Class in light of the potential risk and expense of continued litigation.

Further, the quality of the opposition faced by Class Counsel warrants consideration in assessing the quality of Class Counsel's performance. *See, e.g., Veeco*, 2007 WL 4115808, at *7, 2007 U.S. Dist. LEXIS 85554, at *23 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 03 MDL 1529, 2006 WL 3378705, at *3, 2006 U.S. Dist. LEXIS 84621, at *15 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by Davidson Fink, LLP, an experienced law firm. Therefore, this factor weighs in favor of the requested fee.

Fourth, the requested fee is within the range of percentage fees that courts in this Circuit have awarded in comparable cases.[5] *See Comverse*, 2010 WL 2653354, at *3, 2010 U.S. Dist.

---

[5] The fee award is reasonable under the lodestar approach as well. "Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). The lodestar approach requires the Court to arrive at a reasonable hourly rate for the attorneys and paraprofessionals who worked on the case and "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998). The Court notes that the hourly rates employed by Class Counsel, $350 for partners, $250 for senior associate with fourteen years of experience are reasonable and comport with the prevailing rates in the community. *See Holick v. Cellular Sales of New York, LLC*, No. 12-cv-584, 2021 WL 964206, at *3, 2021 U.S. Dist. LEXIS 47393, at *7 (N.D.N.Y. Mar. 15, 2021) (adopting as reasonable hourly rate of $350 for partners); *Davis-Fisk v. Overton, Russell, Doerr & Donovan, LLP*, No. 1:17-cv-1047, 2018 WL 4509489, *7, 2018 U.S. Dist. LEXIS 159849, at *17 (N.D.N.Y. Sept. 19, 2018) (finding the "prevailing hourly rate for experienced counsel in an FDCPA case in this District is $250"); *Smith v. Nations Recovery Ctr., Inc.*, No. 19-cv-1229, 2021 WL 1267833, at *4, 2021 U.S. Dist. LEXIS 66425, at *12–13 (N.D.N.Y. Apr. 6, 2021) ("For a paralegal, the Court finds that $100 per hour, while on the high end of paralegal rates for FDCPA cases in this District, is reasonable."). Further, the number of hours billed, in this class action litigation, 212.5, ($70,582.50 in billable time) which includes discovery, cross-motions for summary judgment, and a motion for class certification, and which are documented in Class Counsel's time records, are reasonable. (Dkt. No. 110, at 2). In any event, the award Class Counsel seeks, $60,000, is less than the billable time reported in this case.

16

LEXIS 63342, at *10 ("[w]hen determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar . . . class-action settlements of comparable value") (internal quotation marks omitted). Class Counsel's request for approximately forty-three percent of the gross settlement amount, which is approximately $140,000 when the $80,000 Class Recovery and agreement to $60,000 in attorneys fees are considered together,[6] is reasonable and "consistent with the norms of class litigation in this circuit." *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862, at *7, 2011 U.S. Dist. LEXIS 21102, at *17 (E.D.N.Y. Feb. 18, 2011). *See, e.g. Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124, 2017 WL 1155767, at *10 (E.D.N.Y. Mar. 27, 2017) (approving attorneys' fee application in FDCPA class action where "the fees and costs sought would amount to approximately 48% of the approximately $175,000 total settlement"). Given Class Counsel's success in prevailing on summary judgment, procuring class certification, and a reasonable settlement for each Class Member, the Court concludes that the $60,000 award of attorneys' fees is reasonable. *Cf. Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (rejecting argument that the "proportionality of the $3.42 million fee award" should be judged "against the dollar value of the $3.53 million settlement," explaining that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

---

[6] Because "attorneys' fees are part of the recovery in a typical common fund case," in cases where, as here, the award of attorneys' fees is separate from, and does not deplete, the common settlement fund, courts have found it appropriate to use the separate attorneys' fees as "part of the denominator in the calculation of the percentage." *Torres v. Toback, Bernstein & Reiss LLP*, No. 11-CV-1368, 2017 WL 281878, at *2, 2017 U.S. Dist. LEXIS 8824, at *5 (E.D.N.Y. Jan. 23, 2017) ("Here, if the [$195,000 in] attorneys' fees are added to the [$2.5 million in] financial benefits received by the class, the total recovery amounts to approximately $2.7 million, and the percentage of that amount attributable to attorneys' fees falls to 7.2%."); *see also Babcock*, 2017 WL 1155767, at *10, 2017 U.S. Dist. LEXIS 44548, at *25 (adding the settlement and the separately agreed upon fees and costs to ascertain attorneys' fees percentage "of total settlement").

17

Fifth, as also previously discussed above, the positive reaction of the Class, including no relevant objection and one request for exclusion, supports the requested fee. *See Flag Telecom*, No. 02-cv-3400, 2010 WL 4537550, at *29, 2010 U.S. Dist. LEXIS 119702, at *85 (S.D.N.Y. Nov. 8, 2010) ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee.").

The Court finds that the amount of fees requested is fair and reasonable. *See McDaniel*, 595 F.3d at 417.

The Court hereby awards Class Counsel $60,000 for attorneys' fees and costs.

### 2. Service Award

The Court further finds reasonable a service award to Plaintiff in the amount of $1,000. There have been no objections to this service award, and, as previously explained, through Plaintiff's efforts, the Class Representative has enabled over three hundred members to obtain recoveries from Defendant.

Absent those efforts, it is questionable if this Settlement would have been achieved. "Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expanded in assisting in the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Massiah v. MetroPlus Health Plan Inc.*, No. 11-cv-0569, 2012 WL 5874655, at *8, 2012 U.S. Dist. LEXIS 166383, at *22 (E.D.N.Y. Nov. 20, 2012) (citing *Toure v. Amerigroup Corp.*, No. 10-cv-5391, 2012 WL 3240461, at *6, 2012 U.S. Dist. LEXIS 110300, at *16 (E.D.N.Y. Aug. 6, 2012)). *See also Babcock v. C. Tech Collections, Inc.*, No.

:14-cv-3124, 2017 WL 1155767, at *9, 2017 U.S. Dist. LEXIS 44548, at *23 (E.D.N.Y. Mar. 27, 2017) (approving a service award to each plaintiff of $2,500 in FDCPA class action).

Because of the size of the Class, the amount of recovery made available by the Settlement, and Plaintiff's efforts, Plaintiff, as Class Representative merits an award of $1,000.

## V.   CONCLUSION

Accordingly, it is

**ORDERED** that the Joint Motion for Final Approval of Class Settlement (Dkt. No. 107) and Joint Motion for Attorney Fees (Dkt. No. 108) are **GRANTED**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 13) is **DISMISSED with prejudice** and the Clerk is respectfully directed to enter judgment; and it is further

**ORDERED** that the terms of the Settlement Agreement are incorporated into this Order and that Court retains exclusive jurisdiction over the parties and the Settlement Class members to enforce the terms and provisions of the Agreement and this Order.

**IT IS SO ORDERED.**

Dated: August 10, 2021

Brenda K. Sannes
U.S. District Judge